## LAQUE *v.* STATE
(Five Appeals in One Record.)
[No. 107, October Term, 1954.]

*Decided May 16, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE and COLLINS, JJ.

*I. Duke Avnet,* with whom were *James C. Morton, Jr.,* and *Avnet & Avnet* on the brief, for the appellant. .

*Norman P. Ramsey, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, C. Osborne Duvall, State's Attorney for Anne Arundel County,* and *Clarence L. Johnson, Assistant State's Attorney,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

On August 2nd, 1954, five separate warrants were issued by a trial magistrate of Anne Arundel County for the arrest of the appellant on charges that on each of five different dates (April 13, April 22, May 11, July 2 and July 29, all in 1954) at premises on Belle Grove Road, in that County, he "did unlawfully operate a junk and/or salvage yard in violation of Section IV-C-1(d) of the Zoning Ordinance of Anne Arundel County." In each case the appellant prayed a jury trial, the case was transferred to the Circuit Court for Anne Arundel County and the appellant was found guilty by the jury in each case. In one case he was sentenced to a fine of $25 and costs and to six months in jail, the jail sentence to be suspended upon payment of the fine and costs, and the appellant was placed on probation. In three of the other cases he was fined $25 and costs, and in the fourth he was fined $100 and costs.

Before the cases went to trial before the jury the appellant filed a motion to dismiss, which was denied, in

which he asserted that he was not a proper party defendant, that the "ordinance and/or statute under which he has been charged" violated the Constitutions of the United States and of Maryland and specifically asserted that "it" deprived him of property without due process of law, denied him the equal protection of the laws and operated against him as an ex post facto law. He further asserted that the statute and ordinance are too vague and indefinite to be valid, that the "exercise and application of the ordinance and/or statute" violated his constitutional rights and privileges, that the application of the "ordinance and/or statute" constituted an abuse of the power and discretion vested in the persons enforcing the "ordinance and/or statute" and that the charges were so vague and indefinite as to make it impossible for the accused to be informed of the charges against him and thereby prevented him from properly making a defense thereto.

Turning back to the terms of the warrant we note that the defendant is charged with operating "a junk and/or salvage yard in violation of Section IV-C-1(d) of the Zoning Ordinance of Anne Arundel County." The testimony shows that part of the appellant's property is zoned "heavy commercial," part as "agricultural" and a small part as "cottage residential." The Zoning Ordinance does not permit a junk or salvage yard to be located in any area zoned under any of these classifications unless either (1) such a "lawful non-conforming use" existed on the effective date of the Ordinance, July 1, 1952 (See Section I-D), or (2) in the case of property zoned as "heavy commercial" and meeting certain other requirements, a "special exception" allowing such use is granted by the Board of Appeals. (See Section IV-C-1(d).

Section IV-C-1(d) reads as follows:

"C—Powers of the Board of Appeals are as follows: 1. The Board shall have the power to hear and decide, in accordance with the provisions of this Ordinance, requests for special ex-

ceptions or for interpretation of the zoning map or for decisions upon other special questions upon which the Board is authorized to pass. The special exceptions are as follows:

\* \* \*

(d) Junk or Salvage yards.

\* \* \*

The following minimum standards shall be met by each application for any special exceptions above listed:

\* \* \*

(d) For Junk or Salvage Yards such a use may be authorized:

1. Only in a heavy commercial or industrial zone.

2. Where the yard itself be invisible from and at least three hundred (300) feet distant from any state or county highway.

3. Where the general welfare, in the judgment of the Board of Appeals, will not be injured by proximity to populated areas or other circumstances."

The prohibitions against junk yards in areas zoned as "agricultural," "cottage type residential," and "heavy commercial" are contained in Section II A 1 (b) (1), Section II B 2 a (2) (1) and Section II E 1 (b) (1), respectively. The provisions of Section IV-C deal with the powers of the Board of Appeals and sub-division 1 (d) thereof deals only with limitations on the power of the Board to grant "special exceptions" for the use of property as a junk yard or salvage yard. The charge in the warrants has been treated by the appellant, and also by the State, as sufficient to set forth an offense. The appellant's brief states that "In this case, Appellant was being prosecuted criminally under the penalty section of the ordinance which makes it a misdemeanor to operate a salvage or junk yard without approval by the Zoning Board."

Grammatically, the charge in the warrants is open to serious criticism since the appellant obviously could not,

by operating a junk yard, violate provisions of the ordinance defining or limiting the powers of the Board to grant a permit or "special exception" to operate one. However, the elliptical form in which the charge is stated does not appear to have misled the appellant, as is indicated by his construction of the warrants, as stated in his brief; and he has not raised either in the trial court or in this Court any objections to the warrant on the grammatical grounds which we have noted. Had they been raised in the trial court it appears that the charges could have been corrected by amendment of the warrants at any time before final judgment under Code (1951), Article 52, Section 20. The case was tried upon the meaning of the charges as stated in the appellant's brief; and so construed, they do state an offense under the Zoning Ordinance. This construction, we think, is sustainable, though the matter has presented considerable difficulty, and this form of expressing a charge is one which is certainly not to be recommended.*

There are two different bases upon which the sanction of the Board of Appeals might be obtained for the operation of a junk yard or salvage yard. One is that of a lawful non-conforming use; the other is a "special exception."

Section I-D of the Zoning Ordinance provides that "A lawful non-conforming use existing on the effective date of the adoption of these regulations may continue; * * *." That date was July 1, 1952. The appellant argues that this is the controlling date, but his argument overlooks the definition of a "lawful non-conforming use." This is set forth in Section I-B ( a n) as "Any lawful use existing prior to the initial passage of the zoning ordinance and contrary to the zoning restrictions of said ordinance." The date of "the initial passage of the zoning ordinance" was apparently December 2nd, 1947. Under the amended ordinance adopted July 1, 1952, it was necessary for the appellant to obtain a "certificate

---

*See *Leet v. State,* 203 Md. 285, 289-290, 100 A. 2d 789, 791; *Hurwitz v. State,* 200 Md. 578, 92 A. 2d 575; Rule 3 (b) (2) of the Rules of Criminal Procedure.

of occupancy" for the use of the property as a junk or storage yard in order to continue such use. See Section I-C 2(b). To obtain such a certificate, proof would be required of the non-conforming use on December 2nd, 1947, and of its non-abandonment for a period of as much as a year thereafter. The appellant sought such a certificate and the Board of Appeals held a hearing on his application, as a result of which it found that the alleged non-conforming use was not established and accordingly on December 4th, 1953, denied the application. The applicant then appealed to the Circuit Court for Anne Arundel County, and the action of the Board of Appeals was affirmed by the Court on March 11th, 1954.

The other possible form of approval which might be obtained for the operation of a junk or salvage yard is a "special exception." Such an exception is not permissible under the terms of the Zoning Ordinance unless the property in question is zoned as "heavy commercial" or "industrial" and then is permissible only if the yard is "invisible from and at least three hundred (300) feet distant from any state or county highway." The final clause of Section IV-C-1 (d), paragraph (3), requires as an additional condition for the issuance of a special exception permit that, in the judgment of the Board of Appeals, the general welfare "will not be injured by proximity to populated areas or other circumstances." It is this last clause against which the appellant directs most of his attacks based upon constitutional grounds.

The record of the Board of Appeals hearing which was introduced in evidence shows that about a year before Mr. Laque's unsuccessful effort to establish a non-conforming use he had made an unsuccessful effort to obtain from the Board of Appeals a "special exception" to use his property for the salvage of automobile parts. There is nothing to indicate that he took any appeal from this adverse ruling of the Board.

It was thus established that the appellant had neither a certificate of occupancy showing a non-conforming use nor a "special exception" permit to operate a junk or

salvage yard. Hence his operations, if they amounted to the maintenance or operation of such a yard, were in violation of the ordinance and neither of the possible exceptions was available to him. He testified in substance that he did not run a junk yard because his method of operation was merely to salvage and sell usable parts from old automobiles which remained only temporarily on his lot, and that when such parts had been sold he removed the automobile bodies to a junk yard. We think that this is too fine a distinction and that, on his own testimony, he was maintaining and operating a junk or salvage yard.

The appellant's principal argument is that he should be permitted in this case to relitigate the question of whether or not he had established a non-conforming use of the property as a salvage or junk yard. As already pointed out, he selects July 1, 1952, as the decisive date; but because of the definition of a "lawful non-conforming use" we think that December 2, 1947, is the controlling date on this point. He asserts that he has been deprived of a constitutional right, because he was not permitted to relitigate this question so fully as he wished to. We do not agree.

The Zoning Ordinance of July 1, 1952, clearly recognized and offered protection to any lawful non-conforming use in existence on that date, and provided for the protection of such uses as had existed on December 2, 1947 and had not thereafter been abandoned. This Court has recognized that non-conforming uses are rights which are entitled to protection. *Amereihn v. Kotras,* 194 Md. 591, 71 A. 2d 865; *Higgins v. City of Baltimore,* 206 Md. 89, 110 A. 2d 503. In neither of these cases did the provisions of the ordinance involved require any action on the part of the person claiming the use at a time material to the decision of the case. · The 1952 Anne Arundel County Ordinance, unlike its 1947 predecessor, required "certificates of occupancy" for the use of land for other than agricultural or residential uses (or uses accessory thereto). It also makes provision for obtaining such certificates from administrative of-

ficials, and Section 614 of the Code of Public Local Laws of Anne Arundel County provided for judicial review of the action of the Board of Appeals. Mr. Laque followed these procedures, and he appealed from the Board of Appeals to the Circuit Court where he was entitled to full hearing and to produce additional testimony. He has had his day in court on his alleged constitutional rights, and the determination has been adverse to him. We know of no rule of law which requires that he be offered the right to relitigate the question as often as he pleases. The point at issue is really not one of protecting a judgment from collateral attack; the question is simply whether or not he has been deprived of an opportunity to assert in a judicial proceeding a right which he claims and has thereby been denied due process of law. We think that clearly he has had such an opportunity. See *Yakus v. U. S.*, 321 U. S. 414.

The situation is simply that the appellant does not have a "certificate of occupancy" authorizing the use of the property as a junk yard. He has been afforded a full and fair opportunity to get one, including a judicial review of his application for it. The absence of such a certificate bars him from one of the two defenses which he might have under the ordinance. It so happens that this defense is outside the scope of Section IV-C-1(d); but if he had such a certificate it would be a defense against a charge based upon his operating a junk yard without a "special exception" permit from the Board, because no such permit would then be needed.

This reduces him to the one other possible defense—a "special exception" permit to operate a junk yard. It is perfectly clear that he does not have one. The ordinance offers him ample opportunity to get one by the same kind of procedures which were available to him in connection with his effort to establish a non-conforming use. The evidence shows that he tried to get one from the Board and that his application was denied. There is nothing to indicate that he took or attempted to take an appeal from that adverse decision. Every objection to Section IV-C-1(d) or its application which he urges

here was available to him in those proceedings. The State urges that he is obligated to exhaust the administrative remedies available to him and thereafter to pursue the statutory method of appeal and judicial review which was available to him under the procedure provided by Article 66 B of the Code and the ordinance, and denies his right to make a collateral attack on the ordinance as a defense to a criminal prosecution. In this contention it relies largely on *Kahl v. Consolidated Gas Elec. Lt. & Power Co.*, 191 Md. 249, 60 A. 2d 754; *Applestein v. Baltimore*, 156 Md. 40, 143 A. 666; and *Anne Arundel County v. Snyder*, 186 Md. 342, 46 A. 2d 689. None of those cases was a criminal case and they are therefore not directly in point. However, where, as here, there was ample opportunity to present and litigate all of the contentions now presented, we think the same reasoning is applicable. See also *Yakus v. U. S., supra.*

Even if this rule were not applicable, it would seem that in order to present an adequate defense to the charge of operating a junk yard without a "special exception" permit, the appellant would have to show at least that the challenged portion of the ordinance is invalid and that he is entitled to proceed without a permit thereunder. He would promptly encounter two obstacles: first, the separability clause of the ordinance; and, second, the perfectly clear and explicit requirements that a junk yard must not be visible from a State or county highway *and* must be at least 300 feet distant from one. The evidence seems to show rather clearly that the portion of the appellant's tract used for the purposes charged fronts on a public street and is 200 feet in depth. The argument of vagueness which the appellant directs against the provision requiring consideration by the Board of "the general welfare" therefore need not be reached. The appellant has made no argument against the validity of the three hundred foot requirement and has merely questioned whether "an attractive fence" which would cut off visibility would satisfy the ordinance. There is no evidence that there was one at the time of the alleged offenses. We are not prepared to hold that

on their face these explicit provisions are so arbitrary or unreasonable as to be void, and we do not find any deprivation of any constitutional right of the appellant by reason of the "special exception" permit requirements of the ordinance.

The appellant urges several grounds for a reversal of the judgment.

One is the admission of the record of the proceedings before the Board of Appeals on his application for a certificate of occupancy. While there may be some question as to the admissibility of the entire record, we think that the order or resolution based thereon was admissible to negative one possible defense to the charge and that the admission of the entire record is not shown to have been prejudicial to the appellant and his objection to its admission made at the trial appears to have been based on materiality rather than prejudice. For the same reason that we think the resolution of the Board was admissible we think the decree of the Circuit Court affirming the Board's action was admissible.

The appellant also complains that he was not allowed to testify in support of his claim that he had established a non-conforming use. The record shows that he did testify somewhat extensively on this subject. In addition, as what we have already said will indicate, it is not controlling in our view, whether the Board did or did not reach the correct conclusion on that subject; the important facts are that after a full hearing and after review of the Board's decision by the Circuit Court, he does not have a certificate of occupancy based upon an alleged non-conforming use and that neither the Board's action nor that of the Circuit Court in affirming the Board is before us for review in this case.

The appellant also objected to being required to go to trial in the absence of certain witnesses who had not been summoned. No explanation was offered as to why they had not been summoned earlier, despite the fact that it seems perfectly clear that the defendant had notice that his case was to come up on that day. Matters of continuance are ordinarily within the discretion of the

trial judge and it has not been shown that he abused his discretion in this case. Compare *Plank v. Summers,* 205 Md. 598, 109 A. 2d 914. It appears, though it is by no means clear, that the absent witnesses were to be interrogated about the alleged non-conforming use. No amount of such testimony would have supplied the absence of the certificate of occupancy.

We are of the opinion that the judgments should be affirmed.

*Judgments affirmed, with costs.*