Appeal of Suburban General Hospital from Decision of East Norriton Township Zoning Hearing Board. East Norriton Township, Appellant.

Argued October 3, 1979, before Judges ROGERS, DISALLE and CRAIG, sitting as a panel of three.

*J. Edmund Mullin,* with him, *Coleen Park Mc-Cusker, Hamburg, Rubin, Mullin & Maxwell,* for appellant.

*Mabel D. Sellers,* with her, *Raymond Jenkins, Leigh P. Narducci, Jenkins, Tarquini & Jenkins,* for appellee.

OPINION BY JUDGE CRAIG, January 3, 1980:

Suburban General Hospital operates a primary health care facility within an area of East Norriton Township zoned IN-Institutional.

Since 1972, shortly after Suburban General opened, helicopters have sporadically delivered emergency patients by landing on the front lawn of the hospital grounds. Currently, that is the only site available among the three Norristown area hospitals to disembark patients by helicopter.

The Pennsylvania Department of Transportation, Bureau of Aviation, approved the front lawn site. In April of 1976, the Bureau of Aviation, after an inspection, licensed that site as a heliport.

At about the same time, the hospital requested a permit to blacktop an area with a 40-foot diameter on the front lawn, for use as a landing pad which could provide additional safety for the helicopter landings.[1]

---

[1] The township ordinance does not appear to have required a permit because Section 1901 of the ordinance mandates a permit

At that time, the township zoning ordinance lacked any reference to heliports.

The township amended its zoning ordinance on February 8, 1977 to permit "personal use heliports" as a special exception, subject to Bureau of Aviation licensure, fencing and 100-foot setback.[2]

The hospital applied for that special exception but the Zoning Hearing Board of East Norriton Township rejected the application on the ground that applicant had not met its burden of showing that the operation[3] of a heliport would not be detrimental to the general safety in the area. Specifically, the board rejected the testimony of applicant's four expert witnesses[4] that the selected site was the safest on the premises and adopted the reservations expressed by the township planning commission and the township engineer that helicopter landings at the proposed site would be too close to Route 202, constituting a hazard to traveling automobiles.

---

to construct a "building," defined in Section 200(i), in part, as a "structure having enclosed walls and roof. . ." The helipad is more accurately a "structure" under Section 200(oo), construction of which does not appear to require a permit under Section 1901 of the ordinance.

[2] Section 2007 of the township ordinance shifts the burden of proof to the applicant to show that the proposed use is "one which is permitted by special exception" and "will not adversely affect the general public."

[3] We must say that the term "operation" is used somewhat loosely because the record indicates that, by the very nature of medical emergencies, landings would keep occurring only irregularly and sporadically.

[4] William Peterson, Aviation Safety Specialist with the Bureau of Aviation; Lt. Frank Stassacker, a commercial pilot who is currently the Operations Officer for the Horsham Township Police Department's Aviation Unit; Edwin Carpenter, a helicopter pilot and assistant to the Director of Operations, Keystone Helicopter Corporation; David Kocher, former Assistant Aviation Division Chief with the Maryland State Police.

On appeal, the Court of Common Pleas of Montgomery County en banc reversed "in consideration of the applicant's prior use of the premises as a heliport which was licensed, as well as the absence of any detrimental effect on the community." The township appealed.

Although the issues in this case have been somewhat intertwined by the parties,[5] the evidence before the board and the hospital's notice of appeal to the Court of Common Pleas have crystallized two general issues, preserved before us, as follows: (1) is the hospital entitled to a special exception for a "heliport"; or (2) has the hospital established a prior nonconforming use right for a helicopter pad?

A logical approach would be to consider first the existence of the nonconforming use right, if any. Because the lower court reversed the refusal of the special exception, it did not deal with the nonconforming use issue in detail, but unquestionably there is sufficient evidence in the record to permit us to consider it.

The record clearly indicates that the proposed site has been used repeatedly for landings since before the adoption of the ordinance amendment providing for special exceptions for heliports. Its licensure as a heliport by the Bureau of Aviation, is a salient indication that, contrary to appellant's argument, the use of the corner of the lawn for helicopter landings rose to the level of a nonconforming use.

Because landings are made only in cases of medical emergencies, the nature of such a use is that it is intermittent. However, that is not the equivalent of

---

[5] The hospital has argued in terms of its entitlement to a special exception "in recognition of" a prior nonconforming use. Such a mixing of the issues is misleading because a nonconforming use right and entitlement to a special exception are independent bases for use approval in zoning.

a mere casual use of property which could not amount to a nonconforming use.

*Ashline v. Bristol Township Zoning Board of Adjustment,* 408 Pa. 245, 182 A.2d 531 (1962), cited by appellant, was a case of a manifestly casual use where a small portion of otherwise vacant property had occasionally been used by a stranger to the title for temporary storage of overflow from an adjacent automobile graveyard, with the acquiescence of the previous owner. That use could not establish a prior nonconforming use of the entire property for automobile salvage because it was incidental to the business being conducted on the *neighboring* property. In contrast, the recurring, although sporadic, landing of helicopters here, particularly when the spot is licensed as a heliport, was not casual but was importantly related to the primary use on the hospital's own property.

More on point is *Haller Baking Company's Appeal,* 295 Pa. 257, 145 A. 77 (1928) where it was determined that a certain use neither ceased to be a use nor failed to rise to the level of a use merely because it was not continuous. The use need not be uninterrupted; indeed, by the very nature of emergencies, the helicopter use in this case could not have that characteristic.

Although the hospital never registered its previous activity as a nonconforming use, and Section 1808 of the ordinance says that an unregistered nonconforming use becomes a "violation" of the ordinance, the township does not claim that failure to register the nonconforming use constituted an abandonment of it, and Section 613 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10613, does not mandate such a result.

The township instead cites the absence of registration only as evidence that the hospital irrevocably elected to confine its remedy to a special exception. However, there is no reason in law why an applicant cannot pursue the special exception and the right to a nonconforming use in the alternative, as is often done.

Once we perceive that a nonconforming use exists, "a nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance." *Humphreys v. Stuart Realty Corporation,* 364 Pa. 616, 621, 73 A.2d 407, 409 (1950).

In this case, we do not even have to address a proposed expansion of a nonconforming use. The installation of a pad is more in the nature of a modernization designed to provide additional safety. *See E. C. Schneider, Inc. v. Zoning Board of Adjustment,* 389 Pa. 593, 133 A.2d 536 (1957). Here the hospital merely intends to pave the spot it has been using and to add lighting.

Accordingly, we affirm the result reached by the court below, but do so on the grounds that the hospital has established a nonconforming use right.

### ORDER

AND Now, this 3rd day of January, 1980, it is ordered that the order of the Court of Common Pleas of Montgomery County dated August 7, 1978 is modified to delete reference to special exception and to direct the East Norriton Township Zoning Hearing Board to grant Suburban General Hospital approval, by reason of nonconforming use status the application for helicopter landing facility to be located on the northeast corner of the hospital grounds, subject however to all other township ordinances; and, as modified, said order is hereby affirmed.