552 A.2d 942

**COUNTY COMMISSIONERS OF CARROLL COUNTY**

v.

**James M. UHLER, et ux.**

**No. 671, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Feb. 2, 1989.

Charles W. Thompson, Jr., County Atty. for Carroll County (Laurell E. Taylor, Asst. County Atty. for Carroll County, on the brief), Westminster, for appellant.

V. Lanny Harchenhorn (Ellen Luff, on the brief), Westminster, for appellees.

Argued before WILNER, BLOOM and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The County Commissioners of Carroll County, appellant, appeal from the judgment of the Circuit Court for Carroll County, reversing the denial, by the Board of Zoning Appeals of Carroll County ("the Board"), of an application by appellees James and Carla Uhler for certification of their property as a nonconforming use junk yard and/or contractor's equipment storage yard. The basis of the court's decision was its conclusion that the testimony before the Board "compel[led] the court to conclude that the non-conforming equipment storage yard existed on [appellees'] property prior to August, 1965, and has continued uninterrupted to the present day." It was undisputed that appellee's predecessor in title had not complied with a Carroll County ordinance requiring owners or operators of nonconforming junkyards to certify them as such not later than April, 1966. Although the court had previously determined that that ordinance was directory rather than mandatory, it did not decide whether appellees proved the existence of a nonconforming junkyard. Directly challenging the court's judgment, appellant asks:

Whether the mere presence of testimony requires a Board of Zoning Appeals to find an issue not fairly debatable,

especially where that testimony is contradicted and undermined by other evidence before the Board.

We answer that question in the negative. This requires us, in the interest of avoiding a second appeal, *see* Maryland Rule 8–131(a), to address appellant's challenge to the court's determination concerning the mandatory or directory effect of the Carroll County ordinance. Since we find merit in that challenge as well, we will reverse the judgment of the circuit court.

1.

At the hearing, held to consider appellees' application, appellees presented testimony tending to support their position that their property was used, before the deadline date, as either a nonconforming junkyard or a nonconforming contractor's equipment storage yard. In addition to Mr. Uhler's testimony, which was to the effect that the property had equipment and/or junk on it ever since he could remember, they presented the testimony of three other witnesses.[1] Each of those witnesses testified to their observations of the property and how it was used during various periods of time. One of the witnesses testified concerning the period between 1962 to 1966. During that period, he said, there was "always" equipment there. He acknowledged, however, that his observations were made from the road and that he had not been on the property. Furthermore, he

---

1. Another witness appeared and testified in the protestant's stage of the hearing. He was the watershed manager for the City of Baltimore, who appeared because the City owned property adjacent to the subject property. The purpose of his appearance is disclosed in the following comments he made during his direct examination:

> If this hearing and subsequent Board action would open the way for development of a junkyard so near our reservoir, we would, of course, be quite concerned. However we must rely on the good offices of Carroll County to protect our interests as well as their own in this critical area. We trust that the decision reached by the Board of Zoning Appeals will address this concern, that responsible agencies will require that sediment control and storm water management practices are implemented and maintained to protect Liberty Reservoir and City property.

asserted that, "except on the upper end ... towards the Westminster side", he could not see much from the road. Another witness, who also had not been on the property, testified to observing the property and its use over a period of 30 years, as he drove to and from his job in Baltimore. He too testified to always seeing equipment on the property, although, once in a while, equipment was removed or added. That witness also testified that he, along with his brother, had business dealings with Mr. Uhler.

The final witness produced by appellees was a former zoning inspector who visited the property beginning in 1968 or 1970 and continuing until 1982. Although somewhat ambiguous and certainly subject to differing interpretation, his testimony was that he could not see much on the property from the road. In any event, he testified to seeing "several big, heavy-duty trucks all rusted up and not being used—they couldn't be used for anything else really—and a couple of heavy pieces of equipment which was just laying there, really, in all of this underbrush". He also testified that the windows and windshields on the trucks were broken; he estimated that the items had been on the property between 15 and 18 years. The purpose of his visits to the property was to investigate zoning violations. Having cited Mr. Uhler for a violation, he found on subsequent visits to the property that much of the equipment had been removed.[2]

The Board denied the application. In its Official Decision, it found that the applicants failed to meet their burden of proof. Specifically as regards the equipment storage yard argument, it noted that "while there is some evidence that equipment was stored from time to time on the property, we cannot find from this evidence the property was anything more than a location where pieces of equipment were infrequently parked." The Board also noted:

---

2. Presumably the purpose of the former inspector's testimony was to establish the existence of a nonconforming use junkyard.

In weighing the credibility of the witnesses, we believe that there is sufficient reason to doubt testimony that the property has long been a contractor's equipment storage yard. For example, one witness testified that he observed contractor's equipment on the property over the course of thirty (30) years as he travelled to and from Baltimore. The Zoning Inspector, on the other hand, testified that he had to go to the rear of the property to make his inspection because he could not see anything on the property from highway.

On appeal, the circuit court did not agree. Finding that the testimony compelled the conclusion that a nonconforming contractor's equipment storage yard had been established, it reversed the Board and ordered that it issue a zoning certificate to appellants. It remanded the case to the Board for further proceedings.[3]

■ The party asserting the existence of a nonconforming use has the burden of proving it. *Calhoun v. County Board of Appeals*, 262 Md. 265, 167, 277 A.2d 589 (1971); *Lapidus v. Mayor & City Council of Baltimore*, 222 Md. 260, 262, 159 A.2d 640 (1960). Whether that party has met its burden is a matter entrusted to the Board. And, since that decision, as is the decision whether to certify a nonconforming use, can be made only after hearing and determining facts, the Board acts in a quasi-judicial capacity in making it. *See Heaps v. Cobb*, 185 Md. 372, 378, 45 A.2d 73 (1945). In that capacity, the Board acts as factfinder, assessing the credibility of the witnesses and determining what inferences to draw from the evidence. *See Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 513, 390 A.2d 1119 (1978); *Boehm v. Anne Arundel County*, 54 Md.App. 497, 514, 459 A.2d 590, *cert. denied*, 297 Md. 108 (1983).

---

**3.** The application also sought "approval of any structural alterations and/or expansion, if any be found, of the nonconforming use." It was for further proceedings as to this matter that the case was remanded to the Board.

■ When an appellate court reviews the Board's decision, it is limited to determining whether the decision is supported by substantial evidence, *i.e.,* "Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Snowden v. Mayor & City Council of Baltimore,* 224 Md. 443, 448, 168 A.2d 390 (1961); *Bulluck,* 283 Md. at 512, 390 A.2d 1119. If the record is such as to have permitted "a reasoning mind reasonably [to] have reached the factual conclusion the agency reached," *Dickinson—Tidewater v. Supervisor,* 273 Md. 245, 256, 329 A.2d 18 (1974), then the decision is "fairly debatable" and, therefore, the court must uphold it, even though, were it the factfinder, it would have reached a different conclusion. *See Eger v. Stone,* 253 Md. 533, 542, 253 A.2d 372 (1969). In other words, "The court may not substitute its judgment on the question [of] whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness." *Snowden,* 224 Md. at 448, 168 A.2d 390.

■ We agree with appellant that the court applied an improper standard of review. Indeed, we think the court substituted its judgment for that of the Board. Implicit in the court's position is the notion that, when there is no opposition to an application, the Board may not assess the credibility of the witnesses who appear before it. In other words, the court apparently believed that if there was any evidence in the record supporting the relief requested, which is not controverted, as opposed to contradicted, then the Board must grant the relief sought. We do not agree.

As we have already indicated, the assessment of the credibility of the witnesses is a matter entrusted to the Board. We can no more require the Board, which has had the opportunity of seeing and hearing the witnesses, to accept the testimony of witnesses simply because no one testified in opposition to the relief sought, than we could require it to reject such testimony simply because there was opposition testimony. That would constitute usurpation of the Board's function and, necessarily, substitution of our

judgment, including assessment of credibility, for that of the Board. We hold, therefore, that the mere fact of presentation of testimony to the Board does not entitle that testimony to be credited and the Board's determination not to credit it, in and of itself, provides substantial evidence for the Board's conclusion.

In this case, there is another basis upon which the court's decision must be reversed. The evidence before the Board was not uncontradicted. There was a major discrepancy between the former zoning inspector's testimony and that of the other witnesses concerning both the use of the property and what could be seen on the property from the road. Concerning the use of the property, the inspector's testimony tended to establish that the property was used as a nonconforming junkyard, while the testimony of the other witnesses tended to establish that it was used as a contractor's equipment storage yard. Certainly the Board was free to so view the evidence; and when the evidence is so viewed, the uses are mutually exclusive.[4]

Insofar as what could be seen on the property from the road is concerned, as we have pointed out, while the zoning inspector's testimony was far from clear, the Board could have drawn from it the conclusion that in order to see what was on the property one had to go onto the property. Viewed from this light, it is patent, once again, that the Board's decision is fairly debatable.

---

**4.** Appellees argue that there is no inconsistency, necessarily, between a contractor's equipment storage yard and a junkyard. They reason that, if equipment is parked on the property, whether it is usable or not, the property is used for equipment storage. That same equipment, if it is not usable, they say, may also be the basis for finding that the property was used as a junkyard. We reject the argument. In our view, an equipment storage yard contemplates a place where usable equipment is stored; when it is not usable and is kept on property because of that fact, it becomes junk and the property on which it is kept is a junkyard or something else, but certainly not an equipment storage yard.

2.

■ Enacted August 17, 1965, § 4.3 of the Carroll County Zoning Ordinance, in relevant part, provides:

> Any building, structure or premises lawfully existing at the time of the adoption of this ordinance, or lawfully existing at the time this ordinance is amended, may continue to be used even though such building, structure or premises does not conform to use or dimensional regulations of the zoning district in which it is located; subject, however, to the following provisions:
>
> \* \* \* \* \* \*
>
> (e) the owner or operator of any existing nonconforming use involving used car lots, service garages or junk yards shall, not later than April 17, 1966, certify in writing, on a prescribed form, to the Office of the Zoning Administrator, that such nonconforming use did exist on the adoption date of this ordinance. In order that the exact nature and extent of such nonconforming use may be determined, a survey plat prepared by a professional engineer or registered surveyor shall accompany any prescribed form. . . .
>
> \* \* \* \* \* \*

Appellants purchased the subject property in 1978. They do not dispute that their predecessor in title did not timely file the certification pursuant to the ordinance. Instead, before the Board, they argued that § 4.3(e) is directory, rather than mandatory, a position that the Board rejected, but with which the circuit court agreed.

This issue was presented to and decided by the lower court; therefore, it is properly before us. *See* Maryland 8–131(a). Furthermore, in view of our prior holding, it is necessary that we address it. *Id.*

We start with related, but distinct, propositions. First, "A lawfully established non-conforming use is a vested right and is entitled to constitutional protection." *Higgins v. City of Baltimore*, 206 Md. 89, 98, 110 A.2d 503 (1955), citing *Amereihn v. Kotras*, 194 Md. 591, 601, 71 A.2d 865

(1950). *See also Laque v. State,* 207 Md. 242, 251, 113 A.2d 893, *cert. denied,* 350 U.S. 863, 76 S.Ct. 105, 100 L.Ed. 765 (1955). Second, "... the earnest aim and ultimate purpose of zoning was and is to reduce nonconformance to conformance as speedily as possible with due regard to the legitimate interests of all concerned ..." *Grant v. City of Baltimore,* 212 Md. 301, 307, 129 A.2d 363 (1957). Finally, "the right ... to 'continue' a non-conforming use is not a perpetual easement to make a use of one's property detrimental to his neighbors and forbidden to them." *Id.* We are also mindful of the canon of statutory contruction which requires that, when seeking the legislative intent of an enactment, "absent a clear intention to the contrary, a statute, when reasonably possible, is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Mayor & City Council of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174 (1984).

The purpose of § 4.3 clearly is to bring about conformance, through the zoning process, of nonconforming uses as speedily as possible. To accomplish this, the County Commissioners needed to know where the applicable nonconforming uses were located; thus, the required certification of the nonconforming uses within a specified time. In addition, the County Commissioners sought to prevent unlawful expansion of such uses; hence the requirement that information concerning the exact nature and extent of the nonconforming use was required to be furnished. Moreover, the County Commissioners provided a sanction for a landowner's failure to comply with the certification requirement—the discontinuance of the nonconforming use. Although the sanction is not expressed as directly as it might have been, it is implicit in that portion of § 4.3 which makes the continuance of such uses subject to certain conditions, one of which is that set out in subsection (e). A fair interpretation of § 4.3, therefore, giving effect to each of its words, clauses, sentences, and phrases, is that failure to

comply with subsection (e) will result in the discontinuance of the nonconforming use.

Appellees' first argument to the contrary is premised upon cases which hold that, although a statute may use the word "shall", its context, usually the failure to prescribe a sanction for nonconformance, may indicate that its effect is intended to be directory, rather than mandatory. *See,* for example, *In Re Dwayne,* 290 Md. 401, 405–07, 430 A.2d 76 (1981); *Resetar v. State Bd. of Education,* 284 Md. 537, 547–50, 399 A.2d 225, *cert. denied,* 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979); *Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 408–409, 365 A.2d 279 (1976); *People's Counsel v. Public Service Commission,* 52 Md.App. 715, 719–720, 451 A.2d 945 (1982), *cert. denied,* 295 Md. 441 (1983); *Pope v. Secretary of Personnel,* 46 Md.App. 716, 717–19, 420 A.2d 1017 (1980), *cert. denied,* 289 Md. 739 (1981). This argument and the cases relied upon to support it are not apposite, however, since, as we have pointed out, there *is* a sanction provided by the ordinance in this case.

Appellees also contend that, because the Board's interpretation of § 4.3 as mandatory is the first instance it has been so interpreted, either by the Board or by the Circuit Court for Carroll County, we ought to give it the construction which the prior Boards and the courts have given it. We have no doubt that appellees are correct that prior interpretations of the ordinance have been in favor of directory, rather than mandatory, effect. Nevertheless, we do not believe that we are bound by those interpretations, particularly when they have been, and are, erroneous.

For the foregoing reasons, we hold that the Board correctly interpreted § 4.3(e) as mandatory and, conversely, that the circuit court erred in reversing that interpretation. In view of this conclusion, we remand the matter to the Circuit Court for Carroll County for entry of an order affirming the decision of the Board. There is no occasion, therefore, for the matter to be further remanded to the Board to consider questions related to the expansion and/or structural alteration of the nonconforming use.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR CARROLL COUNTY FOR ENTRY OF AN ORDER AFFIRMING THE DECISION OF ZONING APPEALS FOR CARROLL COUNTY.

COSTS TO BE PAID BY APPELLEES.