**BOARD OF ZONING APPEALS, BLOOMINGTON, INDIANA, Appellant (Respondent below),**

v.

**Jack LEISZ and Barbara Leisz, Appellees (Petitioners below).**

No. 53S01–9806–CV–345.

Supreme Court of Indiana.

Dec. 2, 1998.

Susan G. Montgomery, Jennifer L. Lloyd, Bloomington, for Appellant.

Thomas M. McDonald, Diane J. Walker, Bloomington, for Appellees.

## ON PETITION TO TRANSFER

BOEHM, Justice.

We granted transfer to consider whether a zoning ordinance that provides for the forfeiture of a prior nonconforming use if it is not registered constitutes an unconstitutional taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Although important individual property rights are at stake, we conclude that the zoning ordinance at issue served an important public purpose and did not effect an unconstitutional taking. The Court of Appeals concluded that a different result was required by our opinion in *Ailes v. Decatur*

*County Area Planning Comm'n,* 448 N.E.2d 1057 (Ind.1983), in which we held that provisions for amortizing a nonconforming use are unconstitutional regardless of the period of amortization. We reconsider that opinion and overrule its holding that amortization provisions are per se unconstitutional.

### Factual and Procedural Background

Effective June 8, 1985, Bloomington passed a zoning ordinance that limited the occupancy of dwellings in certain neighborhoods to a maximum of three unrelated adults per unit. Bloomington Municipal Code [BMC] § 20.04.01.00. Among the affected properties were two that had been continuously rented to more than three unrelated adults prior to 1985. At the time Bloomington adopted the zoning ordinance it also enacted a grandfathering provision that permitted owners of properties that became nonconforming uses under the zoning ordinance to preserve their lawful nonconforming use status if they registered it by October 1, 1985. BMC § 20.06.02.04(b). Notice of the zoning ordinance and grandfathering provision was published in the local newspaper during the summer of 1985. Notice of both was also mailed to all owners of rental property registered under a separate housing ordinance (BMC § 16.12.060) that required the registration of rental properties in order to facilitate their inspection for compliance with health and safety regulations. Because the two properties involved in this case were not registered under the housing ordinance, the then owners were not given mailed notice of the zoning change. Whether for that reason or otherwise, they did not register the nonconforming use.

Jack and Barbara Leisz purchased the properties in 1989. In 1993, the City of Bloomington notified the Leiszs that their properties were in violation of the 1985 zoning ordinance. The Leiszs requested an administrative ruling that their properties were exempt from the ordinance as pre-existing lawful nonconforming uses. This request was denied by the planning director, and the Leiszs appealed to the Board of Zoning Appeals (BZA), which affirmed. The Leiszs sought review in the trial court, which initially affirmed BZA's decision, but then reversed

that decision in ruling on the Leiszs' motion to correct error. The Court of Appeals affirmed the trial court. *Board of Zoning Appeals v. Leisz*, 686 N.E.2d 935 (Ind.Ct. App.1997). We granted BZA's petition to transfer.

## I. The Takings Issue

The Court of Appeals held that "a vested property interest in a nonconforming use may not be forfeited by the mere failure to register it under a grandfathering provision." *Leisz*, 686 N.E.2d at 939. Although not explicitly citing the constitutional basis of its holding, the Court of Appeals' discussion focused on issues of due process and cited "[t]he constitutional prohibition against taking of property·without due process of law[.]" *Id.* In their brief to the Court of Appeals, the Leiszs argued that "any ordinance which bans an existing lawful use within a zoned area is unconstitutional as a taking of property without due process of law and as an unreasonable exercise of police power." Brief of Appellee at 4 (citing *Jacobs v. Mishawaka Bd. of Zoning Appeals*, 182 Ind.App. 500, 395 N.E.2d 834 (1979)). Due process is a term found in both the Fifth and Fourteenth Amendments to the federal constitution. It does not appear in the Indiana Constitution.[1] In addition to the provisions found in both the Fifth and Fourteenth Amendments prohibiting depriving a person of property "without due process of law," the Fifth Amendment includes a prohibition against taking private property for public use without just compensation. *See* U.S. Const. amends. 14 & 5. This in turn has been held applicable to the states by reason of the Fourteenth Amendment. *Chicago, B. & Q. R. Co. v. Chicago*, 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897); *see also Dolan v. City of Tigard*, 512 U.S. 374, 383–84, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). We conclude that the claims presented turn on whether the forfeiture of the Leiszs' nonconforming use due to the failure to register it violated these provisions of the federal constitution.

### A. The federal Takings Clause

 "[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922). *Mahon* "is generally regarded as the seed from which all modern regulatory taking cases have grown." *Department of Natural Resources v. Indiana Coal Council*, 542 N.E.2d 1000, 1003 (Ind.1989). Seventy years after *Mahon*, however, the Supreme Court acknowledged that the decision "offered little insight into when, and under what circumstances, a given regulation would be seen as going 'too far' for purposes of the Fifth Amendment." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Indeed, the Court has "generally eschewed any set formula for determining how far is too far, preferring to engag[e] in ... essentially ad hoc, factual inquiries." *Id.* (internal quotation marks and citations omitted). "Although no precise rule determines when property has been taken, the question necessarily requires a weighing of private and public interests." *Agins v. City of Tiburon*, 447 U.S. 255, 260–61, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (citation omitted). As an overarching concern, the Court has stated that the Takings Clause is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole[.]" *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960)).

The Court has identified two discrete categories of regulations that violate the Takings Clause regardless of the legitimate state interest advanced. *See generally* Randall T. Shepard, *Land Use Regulation in the Rehnquist Court: The Fifth Amendment and Judicial Intervention*, 38 CATH. U.L.REV. 847 (1989). The first consists of regulations that compel a property owner to suffer a physical

---

1. The closest analogs are Indiana Constitution Article I, § 21, which provides "[n]o person's property shall be taken by law, without just compensation," and Article I, § 12, which states "every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law."

invasion, no matter how minute, of his property. *Lucas,* 505 U.S. at 1015, 112 S.Ct. 2886; *see, e.g., Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (law requiring landlords to allow cable companies to place cable facilities—occupying at most 1½ cubic feet of the landlord's property—in their apartment buildings constituted a taking). The second category concerns regulations that deny "all economically beneficial or productive use of the land." *Lucas,* 505 U.S. at 1015, 112 S.Ct. 2886.[2]

A zoning ordinance that provides for the forfeiture of unregistered nonconforming uses does not fall into either of these prohibited categories. The forfeiture involved no physical invasion of the Leiszs' property. It merely limits the use of their rental property to three unrelated adults instead of four, five or more. Second, the ordinance does not deny the Leiszs all economically beneficial or productive use of their land. Rather, it denies them at most 25% to 40% of the rental income that they might otherwise receive.[3]

**1.** *Legitimate state interest*

■ Even if there is no per se taking, the Fifth Amendment is violated when a land-use regulation "does not substantially advance legitimate state interests[.]" *Id.* at 1016, 112 S.Ct. 2886 (quoting *Agins,* 447 U.S. at 260, 100 S.Ct. 2138). Prior Supreme Court cases "have not elaborated on the standards for determining what constitutes a 'legitimate state interest,'" but have upheld "a broad range of governmental purposes and regulations," including scenic zoning, landmark preservation, and residential zoning. *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 834–35, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

The purpose of the registration requirement, according to the BZA, was to establish an administrative process for making a one-time determination of pre-existing status that protects both the owner and the zoning authority from later lengthy disputes and ex-

tensive proof problems related to the validity of a nonconforming use. The landowners make a qualified concession in this regard: "The Leiszs concede that the city may require a grandfather registration form to be filled out by lawful, pre-existing, non-conforming use and that recordkeeping is useful for the BZA, and protects against problems of proof." Thus, the Leiszs do not attack the registration requirement itself, but rather challenge only its forfeiture penalty.

In upholding a provision similar to Bloomington's, the Court of Civil Appeals of Texas noted that

[t]he purpose of this registration ordinance is to provide [the City] with sufficient knowledge of the nature and extent of nonconforming uses claimed within the City so that the City can consider these nonconforming uses in planning and can monitor their abandonment. Without a registration scheme it would be impossible for [the City] to begin to implement the plan for the fair and reasonable return of the property to the character of the surrounding neighborhood.

*Board of Adjustment of San Antonio v. Nelson,* 577 S.W.2d 783, 785 (Tex.Civ.App.1979), *aff'd. on other grounds,* 584 S.W.2d 701 (Tex. 1979). In discussing a registration requirement in Maryland, the court observed its purpose

clearly is to bring about conformance, through the zoning process, of nonconforming uses as speedily as possible. To accomplish this, the County Commissioners needed to know where the applicable nonconforming uses were located; thus, the required certification of the nonconforming uses within a specified time. In addition, the County Commissioners sought to prevent unlawful expansion of such uses; hence the requirement that information concerning the exact nature and extent of the nonconforming use was required to be furnished. Moreover, the County Commissioners provided a sanction

---

**2.** As the Court noted in *Lucas,* however, regulations that prohibit all economically beneficially use of land are still permissible if they do no more than duplicate the result that could have been achieved under state nuisance law. 505 U.S. at 1029, 112 S.Ct. 2886.

**3.** One property is currently being rented to four individuals and the other to five. If limited to a maximum of three occupants per unit, the Leiszs presumably may charge each tenant at least the same rent, if not more.

for a landowner's failure to comply with the certification requirement—the discontinuance of the nonconforming use.

*County Comm'rs of Carroll County v. Uhler,* 78 Md.App. 140, 552 A.2d 942, 946 (Md. Ct. Spec.App.1989) (ordinance required only the registration of used car lots, service garages or junk yards).

The very real problem associated with proving the existence of a nonconforming use several years in the past is highlighted by this case. The Leiszs offered affidavits and copies of old leases listing the names of four or five individuals living in the rentals when the ordinance was enacted. However, the BZA found this insufficient to prove uninterrupted occupancy by more than three adults since 1985.[4] *Leisz,* 686 N.E.2d at 939. Moreover, one of the purposes of any city's zoning regulations is to promote the orderly, responsible, and beneficial development and growth of its city. *See, e.g.,* BMC § 20.01.02.02(a). This would be very difficult—if not impossible—without some mechanism to monitor nonconforming uses.

Although they concede the value of requiring registration of nonconforming uses, the Leiszs seem to suggest that there should be no penalty for noncompliance. The forfeiture provision, however, is a necessary part of the registration requirement. By its very nature, registration requires that a deadline be set. In this case, the June 8, 1985 ordinance required registration of nonconforming uses by October 1, 1985. Allowing nonconforming uses to continue indefinitely after the expiration of the registration deadline would make the entire registration requirement an exercise in futility. In sum, we conclude that the registration requirement, including the forfeiture sanction, substantially advances a legitimate state interest.

### 2. *Economic considerations*

The U.S. Supreme Court has identified three factors of "particular significance" to an ad hoc takings inquiry: (1) "[t]he econom-ic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Central,* 438 U.S. at 124, 98 S.Ct. 2646. Under the current zoning ordinance, the Leiszs may continue to use their two properties as rental units. Due to the failure of the prior owners to register their nonconforming use, however, they are restricted to renting the units to a maximum of three unrelated adults. Their property continues to have an economically viable use, even if it is somewhat diminished.

When a regulation is, as in this case, "reasonably related to the promotion of the general welfare," the Supreme Court has "uniformly reject[ed] the proposition that diminution in property value, standing alone, can establish a 'taking[.]'" *Id.* at 131, 98 S.Ct. 2646 (citing *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (75% diminution in value); *Hadacheck v. Sebastian,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (87½% diminution in value)). Although a valid consideration, the diminution of the value of the Leiszs' rentals is not the only consideration. Even if it is a fair measure of "the economic impact of the regulation" prong of *Penn Central,* other factors are equally relevant to the takings issue under the facts of this case. In particular, the forfeiture of the Leiszs' nonconforming use caused no interference with their reasonable investment-based expectations. Both the ordinance and the prior owners' failure to register were matters of public record at the time the Leiszs bought their property. Property owners are charged with knowledge of ordinances that affect their property.[5] *Wesner v. Metropolitan Dev. Comm'n,* 609 N.E.2d 1135, 1137 n. 2 (Ind.Ct.App.1993); *cf. Texaco, Inc. v. Short,* 454 U.S. 516, 532, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) ("It is well established that persons owning property within a state are charged with knowledge of relevant statutory provisions affecting the

---

4. In addition to being considered by the City Planning Director and in the BZA Staff Report, this issue was litigated at the BZA appeal hearing, in the trial court, and in the Court of Appeals. Litigation of the issue appears to have triggered the very type of lengthy proceeding that the registration requirement seeks to prevent.

5. The Leiszs do not contend that Bloomington failed to provide notice of the enactment of the ordinance or that the ordinance was not available for their review—both of which are mandated by statute. See Ind.Code § 36–7–4–610(a) & (b) (1998).

control and disposition of such property."). Their reasonable expectation was that the city might show up at their properties at any time and demand the termination of their unregistered nonconforming use. Any investment-backed expectation they harbored out of ignorance of the ordinance is entitled to no weight.[6] Indeed, whether they were aware of it or not, the price at which they bought the properties may have been, and in a perfect world was, a reflection of this risk.

The character of the governmental action points in the same direction. The registration requirement takes nothing from the landowner. Rather, it merely requires the filing of a form by a designated date. Noncompliance with the regulation, not the regulation itself, results in the forfeiture of a vested property right. The power to protect the property interest rests solely with the landowner. The Supreme Court addressed a similar situation in *United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985), which dealt with a federal law that provided for the forfeiture of mining claims if they were not registered within three years of the law's enactment and every year thereafter. *Id.* at 88, 105 S.Ct. 1785. The Court found no taking, noting that it had never required the payment of just compensation to a landowner "for the consequences of his own neglect." *Id.* at 107, 105 S.Ct. 1785 (quoting *Texaco,* 454 U.S. at 530, 102 S.Ct. 781). The landowner's property loss

> could have [been] avoided with minimal burden; it was their failure to file on time—not the action of Congress—that caused the property right to be extin-

guished. Regulation of property rights does not "take" private property when an individual's reasonable, investment-backed expectations can continue to be realized as long as he complies with reasonable regulatory restrictions the legislature has imposed.

*Id.* The claims in *Locke* were worth millions of dollars and reverted to the federal government. *Id.* at 89, 105 S.Ct. 1785. In contrast, the Leiszs have merely forfeited the right to use their rental properties to house more than three unrelated individuals and the City of Bloomington has received nothing from them.

■ We conclude that the forfeiture of the Leiszs' nonconforming use due to its nonregistration is not a taking under the Fifth and Fourteenth Amendments. The ordinance at issue serves important public purposes. Any diminution in the economic value of the Leiszs' property is the direct result of their predecessors' failure to comply with a reasonable registration requirement. Under these facts, the forfeiture of the Leiszs' nonconforming use in no way offends notions of "fairness and justice." This view is consistent with the Supreme Court's opinion in *Locke* and also finds support in other jurisdictions that have considered and upheld similar provisions. *See, e.g., Uhler,* 552 A.2d at 946 (landowner's failure to comply with requirement for obtaining nonconforming use certificate required discontinuance of nonconforming use); *Nelson,* 577 S.W.2d at 785–86 (nonconforming use lost where owner failed to register it within time period provided by ordinance).[7]

---

**6.** A legitimate example of the frustration of distinct investment-backed expectation is found in *Mahon,* 260 U.S. at 412–15, 43 S.Ct. 158, in which the claimant had sold the surface rights to particular parcels of property, but expressly reserved the right to remove the coal underneath. A subsequent statute forbade any mining of coal that caused the subsidence of any house unless the house was the property of the owner of the underlying coal and was more than 150 feet from the improved property of another. This had the effect of completely eliminating rights the claimant had reserved from the owners of the surface land and was therefore held to constitute a taking.

**7.** The Court of Appeals cited *Appeal of Suburban General Hospital,* 48 Pa.Cmwlth. 273, 410 A.2d 85 (Pa.Commw.Ct.1980) for the proposition that

the failure to register a nonconforming use did not constitute abandonment. A subsequent case of the same court, however, held that landowners who "failed to avail themselves of the available administrative means of establishing that their nonconforming use was lawful" by registering it could not assert a right of nonconforming use. *Pfeffer v. Hopewell Township,* 60 Pa.Cmwlth. 399, 431 A.2d 1149, 1150 (Pa.Commw.Ct.1981). We believe that our opinion is in accord with *Pfeffer* and not inconsistent with *Suburban General.* Neither the Leiszs nor the prior owners abandoned their nonconforming use. They did not evince an intent to abandon renting the property to more than three unrelated adults. Abandonment requires both intent to abandon and a voluntary act or failure to act signifying abandonment. *Stuckman v. Kosciusko County Bd. of Zoning Appeals,* 506 N.E.2d 1079, 1082 (Ind.

### B. *Reconsidering Ailes*

■ The Court of Appeals drew guidance from our opinion in *Ailes v. Decatur County Area Planning Comm'n*, 448 N.E.2d 1057 (Ind.1983), in which this Court held certain zoning provisions to be per se violations of the federal constitution. The Court of Appeals inferred from *Ailes* that Indiana's "vigorous[ ] protect[ion of] vested interests in nonconforming uses" is greater than that of other states. *Leisz*, 686 N.E.2d at 939. The federal constitution does not vary from state to state. Although we are free to find greater restrictions on regulatory takings in our state constitution, this Court in *Ailes* was not interpreting the state constitution. Rather, the Court there, like the Court of Appeals and the Leiszs, referred to the taking of property "without due process of law[.]" *Ailes*, 448 N.E.2d at 1060. For the reasons discussed above and because it cited no Indiana constitutional provision or precedent, *Ailes* rested solely on federal constitutional grounds. Accordingly, we now re-examine our holding in *Ailes*, which clearly represents a minority view and is inconsistent with decisions in other jurisdictions interpreting the federal constitution.

■ Most states allow local zoning authorities to phase out nonconforming uses with amortization provisions that require the owner to discontinue the nonconforming use after a certain period of time. *Leisz*, 686 N.E.2d at 939 (citing DANIEL R. MANDELKER, LAND USE LAW § 5.70 (3d ed. 1993)). Under an amortization provision, an owner's property right is absolutely extinguished at some point in time. Our decision in *Ailes* found this to be an unconstitutional "taking of property without due process of law," not specifically a violation of the Takings Clause but inferentially implicating the Fifth Amendment. *See Ailes*, 448 N.E.2d at 1060. As noted in *Ailes* and conceded by the Leiszs, however, property rights are not absolute, and many zoning provisions other than amortization are permitted in Indiana. Examples include prohibiting the expansion or increase of a nonconforming use and disallowing reinstatement after abandonment f the nonconforming use. *Id.* at 1059.

■ Because *Ailes* turns on the federal constitution, it is correct only to the extent consistent with U.S. Supreme Court precedent. The Supreme Court has never directly considered the constitutionality of amortization provisions. However, most other courts that have considered the issue have held that amortization provisions are not unconstitutional per se. *See* Jay M. Zitter, Annotation, *Validity of Provisions for Amortization of Nonconforming Uses*, 8 A.L.R.5TH 391, 412–22, 1992 WL 767609 (1992) (listing three federal circuits and twenty-four states as supporting the "[v]iew that amortization provisions are valid if they are reasonable," and no federal circuits and only four states adhering to the "[v]iew that all amortization provisions are invalid in general"). Although each state is free to find amortization provisions to be in violation of its state constitution, no state court can uphold amortization provisions if they are in violation of the federal constitution.

With the sole exception of this Court's decision in *Ailes*, state courts that have found amortization provisions unconstitutional have done so on the basis of their state constitution. *Id.* at 419; see also *Hoffmann v. Kinealy*, 389 S.W.2d 745 (Mo.1965); *Akron v. Chapman*, 160 Ohio St. 382, 116 N.E.2d 697 (Ohio 1953) (citing both state and federal constitutional provisions); *PA Northwestern Distribs., Inc. v. Zoning Hearing Bd.*, 526 Pa. 186, 584 A.2d 1372 (Pa.1991). We can only conclude that *Ailes*, in holding that amortization provisions are unconstitutional per se, incorrectly decided an issue of federal constitutional law. No issue has been raised and we express no opinion as to any state constitutional point.

### II. Procedural Due Process

■ Although the Leiszs never directly raised a procedural due process challenge, both the trial court and Court of Appeals dealt with the issue. As stated by the trial court in its order granting the Leiszs' motion to correct error, which was also quoted in the Court of Appeals opinion: "[The Leiszs'] right to nonconforming use would be very hollow indeed if it could be lost to a grandfa-

1987). As our holding today makes cl ar, however, nonconforming uses may be forfeited in

ways other than the owner's voluntary abandonment.

thering requirement, the notice of which was sent only to specific recipients, and which required registration within a very short period of time." *Leisz,* 686 N.E.2d at 938. Both courts focused on the means of notice given and the length of time provided to register as a nonconforming use.

■ In granting the Leiszs' motion to correct error, the trial court stated "[o]bviously, the Leiszs (or their predecessors) could not have registered their properties for purposes of grandfathering because the notices were sent only to those who were registered as rentals." We disagree. Notice was mailed to all property owners registered under BMC § 16.12.060, a housing ordinance that requires all rental units to be registered with the city engineer in order to subject them to inspections to ensure compliance with minimum health, safety, and public welfare standards. *Leisz,* 686 N.E.2d at 936; *see also Noble v. Alis,* 474 N.E.2d 109, 111 (Ind.Ct.App.1985) (discussing the Title 16 housing ordinance). By not registering under this ordinance, the prior owners presumably avoided these inspections but also lost the opportunity to receive individualized notice by mail of the enactment of the grandfathering registration requirement. *See, e.g., Elizondo v. Read,* 588 N.E.2d 501, 504 (Ind. 1992) ("The U.S. Supreme Court's line of opinions addressing the issue of notice has never disregarded a party's ability to take steps to protect itself. Rather, the Court has considered the interest holder's ability to take reasonable steps to protect his interest as a crucial aspect of the balancing test."). Sending individualized notice only to those units registered under the housing code satisfied the requirements of procedural due process where both affected properties were required to be registered under a different valid ordinance. *Cf. Holmes v. Randolph,* 610 N.E.2d 839, 846 (Ind.1993) (upholding the notice provisions of statute dealing with abandoned vehicles by noting that vehicle owners have a duty to notify the BMV of changes in address and the BMV can assume

that mailing notice to last recorded address will reach the owner of an abandoned vehicle). We cannot expect a city to canvass all of its housing units to search for those being used as rentals in order to provide them with individualized notice. The Due Process Clause

> does not require that "the procedures used to guard against an erroneous deprivation ... be so comprehensive as to preclude any possibility of error," and in addition we have emphasized that the marginal gains from affording an additional procedural safeguard often may be outweighed by the societal cost of providing such a safeguard.

*Walters v. National Ass'n of Radiation Survivors,* 473 U.S. 305, 320–21, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (quoting *Mackey v. Montrym,* 443 U.S. 1, 13, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979)).

The trial court also expressed concern with the brevity of time allowed for the required registration. We assume that the registration form, although not contained in the record, was relatively short and simple. The four months given to complete and file this form is longer than the time allowed to file a federal or state income tax return.[8] It is enough to satisfy the Constitution.

### Conclusion

The judgment of the trial court is reversed. This case is remanded with instructions to affirm the decision of the Board of Zoning Appeals. The remaining issues addressed by the Court of Appeals are moot in light of our holding on the issue of grandfather registration.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

8. Four months is, however, a shorter period of time than that given to the landowners in the cases discussed in Part I of this opinion. See *County Comm'rs of Carroll County v. Uhler,* 78 Md.App. 140, 552 A.2d 942 (Md. Ct. Spec. App.1989) (eight months); *Board of Adjustment of San Antonio v. Nelson,* 577 S.W.2d 783 (Tex.

Civ.App.1979) (three years); but cf. *Texaco,* 454 U.S. at 532, 102 S.Ct. 781 ("the question whether a statutory grace period provides an adequate opportunity for citizen to become familiar with a new law is a matter on which the Court shows the greatest deference....").