CITY OF MARION, Indiana, Bill Henry, as Mayor of the City of Marion, Indiana, and Robert Dawalt, as Municipal Attorney for the City of Marion, Indiana, Appellants–Defendants,

v.

Barry HOWARD, Joan Howard, and Barodge Auto Pool, Inc., Appellees–Plaintiffs.

No. 18A02–0411–CV–950.

Court of Appeals of Indiana.

Aug. 4, 2005.

Rehearing Denied Sept. 20, 2005.

Liberty L. Roberts, Collier ~ Magar & Roberts, Indianapolis, for Appellants.

Mark A. McCann, Jeremy A. Peelle, Kokomo, for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

The City of Marion ("the City"), former Mayor William Henry ("the Mayor"), and city attorney Robert Dawalt (collectively "the Appellants") appeal a judgment of $170,200 in an action brought by Barry and Joan Howard that alleged an unconstitutional taking of their property. We reverse and remand.

### Issue

We will not analyze the issues raised by the parties regarding collateral estoppel and sufficiency of the evidence. Instead, we are compelled to address sua sponte whether the trial court had subject matter jurisdiction to enter the judgment in this case.

### Facts

The undisputed facts in this case are that the Howards own a business called Barodge Auto Pool, Inc. Barodge picks up vehicles that have been damaged in accidents at the request of insurance companies. It then stores the vehicle at its site, until the insurance company settles with its insured and takes title to the vehicle. Barodge then auctions off the vehicle on behalf of the insurance company.

The Howards operated Barodge in Fairmount, Grant County, from 1991 to 1999. In the summer of 1999, the Howards began looking for a new location in Grant County for their business. They obtained maps from the Grant County Area Plan Commission and found an available parcel of property in Marion that was zoned Industrial–2 (I–2), the same as the Fairmount location. The property then was being used for agricultural purposes. The Howards arranged to purchase the property, contingent upon receiving approval from the Commission to the change the current use of the property to allow them to operate Barodge there. On June 30, 1999, the Commission approved the change of use of the property to allow "storage of disabled vehicles," a permissible use under county ordinances for the I–2 zoning classification. Between July and September 1999, the Howards began moving cars from their Fairmount location to the new

Marion location and preparing the property for use by Barodge.

On November 8, 1999, three businesses located near the Howards' property—General Motors, Moorehead Communications, and Carroll Container—wrote a letter to the Plan Commission's director, Tanya Ford, asserting that Barodge was actually a junkyard and the use of the property as such violated the zoning ordinances. Ford disagreed with the businesses and declined to take any action against the Howards. On November 22, 1999, the businesses appealed Ford's decision to the Grant County Area Board of Zoning Appeals—Marion Division ("BZA"). The BZA conducted a hearing on the matter on December 13, 1999. At the hearing's conclusion, the BZA voted 3–2 to conclude that the Howards were using their property as a junkyard, and such use required either a change of zoning or granting of a special exception pursuant to the Grant County zoning ordinances. On January 12, 2000, the Howards filed with the trial court a petition for writ of certiorari seeking judicial review of this BZA decision.

Meanwhile, on January 5, 2000, the Howards filed another change of use form for their property with the Plan Commission, seeking permission to use the property as an "auction sales yard (non-livestock)," a permissible use under the I–2 zoning classification. However, "auto auction" is not a permissible use under the zoning ordinances. The Commission denied this change of use request. The Howards appealed this determination to the BZA. After conducting a hearing, on April 17, 2000, the BZA declined to overrule the Commission. On May 12, 2000, the Howards filed with the trial court another petition for writ of certiorari seeking judicial review of this second BZA ruling.

The Howards never sought to have their property rezoned to I–3, which would allow operation of Barodge as a junkyard as of right, nor sought to obtain a special exception from the BZA for Barodge.

On Thursday, September 7, 2000, city attorney Dawalt, after consulting with the Mayor and others, decided to file a nuisance complaint against the Howards because they were continuing to operate Barodge at the Marion location while their appeals from the two BZA decisions were pending.[1] Dawalt also sought and obtained an ex parte temporary restraining order against the Howards. Relying on this order, Dawalt padlocked the gates to Barodge, effectively shutting it down. On Monday, September 11, 2000, the trial court dissolved the temporary restraining order and admonished Dawalt that it had not intended for him to padlock Barodge's gates. The trial court also ordered the nuisance complaint consolidated with the pending appeal from the first BZA decision.

On February 9, 2001, the trial court considering the first BZA appeal upheld the BZA's decision classifying Barodge as a junkyard. It also ruled against the City on its nuisance complaint against the Howards. Additionally, although it had not been explicitly raised in their certiorari petition, the trial court also rejected an argument apparently raised by the Howards at trial on this matter that the Mayor had exerted undue influence on the members of the BZA. On February 20, 2002, the trial court considering the second BZA appeal dismissed the petition for certiorari "for Lack of Jurisdiction," apparently based on arguments that the action was barred by res judicata or collateral estoppel. App. p. 607.

---

1. At the time this action was filed, the Howards apparently had not obtained a trial court stay of the BZA's rulings, although they apparently did do so shortly thereafter.

On August 7, 2001, meanwhile, the Howards filed a lawsuit against the City, the Mayor, and Dawalt, as well as Ford and the Plan Commission. The complaint originally sought recovery in four counts pursuant to the Indiana Tort Claim Act, negligence (with respect to Ford and the Plan Commission and later restated as an unconstitutional takings claim), violation of Indiana Trial Rule 65 governing temporary restraining orders, and finally under 42 U.S.C. § 1983 for alleged violations of their federal constitutional rights. Through pretrial and trial motions, the claims were eventually whittled down to only the § 1983 count against the City, the Mayor, and Dawalt. The basic facts alleged to underlie this count were that the Mayor exercised improper, illegal, and undue influence upon the BZA members to persuade them to vote against the Howards on matters regarding Barodge and their property in Marion. Thus, the Howards claimed, they were deprived of a neutral decisionmaker in the BZA in violation of due process, and the BZA's decisions regarding Barodge's impermissible status as a junkyard amounted to a taking of their property by the government. Additionally, the Howards sought damages related to Dawalt's padlocking of their business from September 7 to 11, 2000.

A jury trial was conducted on September 27 to 30, 2004. At its conclusion, the jury returned a verdict in the Howards' favor in the amount of $170,200 and the trial court entered judgment accordingly. On October 12, 2004, the trial court denied the Appellants' motion to correct error and awarded attorney fees to the Howards in the amount of $32,486.50 pursuant to 42 U.S.C. § 1988. The Appellants now appeal.

### Analysis

The existence of subject matter jurisdiction in a trial court is a requirement for the entry of a valid judgment. *Buckalew v. Buckalew,* 754 N.E.2d 896, 898 (Ind.2001). The absence of subject matter jurisdiction is not an issue subject to waiver, and it renders a judgment void. *State ex rel. Hight v. Marion Superior Court,* 547 N.E.2d 267, 269 (Ind.1989). "The parties by consent or agreement cannot confer subject matter jurisdiction on a court." *Id.* Even if no party raises the issue, "Where lack of subject matter jurisdiction in the original tribunal is apparent from the record, it is the duty of the reviewing court to raise and determine the issue sua sponte." *Town Council of New Harmony v. Parker,* 726 N.E.2d 1217, 1223 n. 8 (Ind.2000). A failure to exhaust administrative remedies deprives a trial court of subject matter jurisdiction over a complaint challenging agency action. *Johnson v. Celebration Fireworks, Inc.,* 829 N.E.2d 979, 984 (Ind.2005).

Originally, the Howards stated several claims against the Appellants, some of which were based on state law. By the time this case was submitted to the jury, however, all but one set of claims had been dismissed. The remaining primary issue the jury was asked to consider was, as described by the Howards, whether they "were subjected to an unconstitutional taking without due process" and were entitled to relief under 42 U.S.C. § 1983. Appellee's Br. p. 2. In other words, the Howards contend that the BZA's decision to describe Barodge as a junkyard operation that was not automatically permissible in an I–2 zoning district amounted to a governmental taking of the property they purchased in Marion.

A zoning regulation of property may be considered a governmental taking if the regulation "goes too far." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). The United States Supreme Court has

identified two categories of regulations that constitute per se takings. *Board of Zoning Appeals, Bloomington v. Leisz,* 702 N.E.2d 1026, 1028 (Ind.1998). "The first consists of regulations that compel a property owner to suffer a physical invasion, no matter how minute, of his property." *Id.* at 1028–29 (citing *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992)). "The second category concerns regulations that deny 'all economically beneficial or productive use of the land.'" *Id.* at 1029 (quoting *Lucas,* 505 U.S. at 1015, 112 S.Ct. at 2893).

█ Even if there is no per se taking, a court may engage in an "ad hoc" inquiry to determine whether there has been a government regulatory taking of property that requires compensation, based on the balancing of three factors: "(1) '[t]he economic impact of the regulation on the claimant,' (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations,' and (3) 'the character of the governmental action.'" *Id.* at 1030, 112 S.Ct. 2886 (quoting *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978)).[2] Here, although the Howards sometimes seem to argue that the BZA's action constituted a per se taking, theirs is really an ad hoc and permanent takings claim. We note that although the BZA's action prevented the Howards from operating Barodge precisely as they wanted to unless they obtained rezoning or a special exception, it does not appear that they were denied all economically beneficial or productive use of the property. *Cf. Lucas,* 505 U.S. at 1018, 112 S.Ct. at 2894–95 (stating that regulations leaving the owner of land entirely without economically beneficial or productive options for its use typically are ones requiring land to be left substantially in its natural state). Additionally, the Howards cite the three-part ad hoc takings test in their appellate brief as controlling this case.

In this court's research into the merits of the Howards' takings claim, we reviewed *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In that case, a landowner submitted a development plan for his property to the local planning commission, which was preliminarily approved. The landowner spent $3.5 million developing the property in accordance with the preliminary approval. To summarize what followed, the commission later effectively changed its mind regarding the development and concluded that it violated zoning regulations. The landowner's successor filed suit in federal court pursuant to 42 U.S.C. § 1983, asserting that the commission had taken its property without just compensation and in violation of due process. After a jury trial, the court entered judgment in favor of the landowner's successor in the amount of $350,000.

On appeal, the Supreme Court held that any takings claim against the commission was premature and unripe for adjudication. *Id.* at 186, 105 S.Ct. at 3116. Specifically, the Court held, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* The Court held there had

---

**2.** Recently, the Supreme Court discarded an apparent fourth way in which a regulatory taking could have been found under prior precedent: if the regulation failed to substantially advance a legitimate state interest. *See Lingle v. Chevron U.S.A. Inc.,* —— U.S. ——, 125 S.Ct. 2074, 2087, 161 L.Ed.2d 876 (2005).

been no final decision regarding the use of the property, despite the planning commission's disapproval of the development plat, because the landowner had refused to follow the established procedures for attempting to obtain variances from the governing zoning regulations. *Id.* at 190, 105 S.Ct. at 3118. The Court concluded, therefore, "respondent has not yet obtained a final decision regarding how it will be allowed to develop its property." *Id.* The Court also held that the landowner successor's suit was premature and unripe, whether its arguments were characterized strictly as a Fifth Amendment Just Compensation Clause claim or as a Fourteenth Amendment Due Process Clause claim. *Id.* at 200, 105 S.Ct. at 3123–24.[3]

The Court later described the *Williamson* "final decision" requirement, and the need for a landowner to seek an exception or variance from an ordinance or regulation before alleging an unconstitutional taking, as follows:

> Leaving aside the question of how definitive a local zoning decision must be to satisfy *Williamson County's* demand for finality, two points about the requirement are clear: it applies to decisions about how a takings plaintiff's own land may be used, and it responds to the high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer. As the Court said in *MacDonald,* "local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other." When such flexibility or discretion may be brought to bear on the permissible use of property as singular as a parcel of land, a sound judgment about what use will be allowed simply cannot be made by asking whether a parcel's characteristics or a proposal's details facially conform to the terms of the general use regulations.

*Suitum v. Tahoe Reg'l Planning Agency,* 520 U.S. 725, 738–39, 117 S.Ct. 1659, 1667, 137 L.Ed.2d 980 (1997) (quoting *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 350, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986)).

We now analyze the effect of *Williamson's* "final decision" requirement on Indiana procedure. The *Williamson* opinion does state that its "final decision" requirement is not necessarily the same as requiring the exhaustion of administrative remedies, although "the policies underlying the two concepts often overlap ...." *Williamson,* 473 U.S. at 192–93, 105 S.Ct. at 3119–20.

> [T]he finality requirement is concerned with whether the initial decisionmaker

---

3. The *Williamson* court held that the suit was unripe for a second reason: the landowner successor had not followed established state procedures for seeking just compensation through an inverse condemnation action. 473 U.S. at 196, 105 S.Ct. at 3121–22. Four justices recently questioned the validity of this second requirement. *See San Remo Hotel, L.P. v. City and County of San Francisco, California,* —— U.S. ——, 125 S.Ct. 2491, 2508, 162 L.Ed.2d 315 (2005) (Rehnquist, J., concurring). Additionally, the *San Remo* majority clarified that a state court may simultaneously hear an inverse condemnation action with a federal takings claim; a landowner does not have to first be denied compensation by a state court before filing a federal takings claim in state court. *Id.,* 125 S.Ct. at 2506. *San Remo* does not appear to impact the importance of the first *Williamson* requirement of a final administrative decision regarding the use of property as a prerequisite for bringing a § 1983 action alleging an unconstitutional regulatory taking in violation of the Just Compensation Clause and/or the Due Process Clause. It also appears the Howards never sought compensation under Indiana's inverse condemnation procedures, either in this cause of action or any other.

has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

*Id.* at 193, 105 S.Ct. at 3120. Under these definitions, it appears that the "finality requirement" essentially is a subset of the "exhaustion requirement"—if there is no finality, there has not been an exhaustion of remedies, but a failure to exhaust remedies does not necessarily mean there has not been a final decision by the initial decisionmaker.

We find that, for purposes of Indiana procedural law, our supreme court has held the "finality requirement" affects a trial court's subject matter jurisdiction to hear a takings claim, and that a failure to obtain a final decision from the appropriate agency regarding land use amounts to a failure to exhaust administrative remedies. In *Parker*, a landowner filed suit challenging a plan commission administrator's statement that he would not issue a development permit for the land. Our supreme court held that the trial court lacked subject matter jurisdiction to decide whether the refusal to issue the permit constituted a taking because no formal application for the permit was made nor were any variances sought. *Parker*, 726 N.E.2d at 1224–25. The court held, "It is well-established that, if an administrative remedy is available, it must be pursued before a claimant is allowed access to the courts.

Failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction." *Id.* at 1224.

 The *Parker* court did not cite or discuss *Williamson.* It did, however, rely substantially upon *Penn Central* for its holding, in which the Supreme Court held that there was no unconstitutional taking based upon New York City's refusal to allow construction of a fifty-story tower at Grand Central Terminal because the landowner never sought approval for construction of a smaller structure. *Id.* at 1225 (citing and quoting *Penn Central,* 438 U.S. at 136–37, 98 S.Ct. at 2665–66). *Penn Central* was one of the key cases the Supreme Court relied upon in *Williamson* in enunciating the "final decision" requirement for bringing a regulatory takings or related due process claim against the government. *See Williamson,* 473 U.S. at 187–91, 105 S.Ct. at 3117–19. We conclude *Parker* clearly stands for the proposition that a landowner's failure to seek a final administrative decision regarding the application of zoning laws to his or her property, as required by *Williamson,* amounts in Indiana to a failure to exhaust administrative remedies and deprives a trial court of subject matter jurisdiction to enter judgment in a takings or related due process cause of action.[4]

We must conclude, after reviewing *Williamson* and *Parker*, that the trial court lacked subject matter jurisdiction to enter judgment on the Howards' claim that the government unconstitutionally took their property when the BZA decided that Barodge was a junkyard that violated the fa-

---

4. The Howards assert there is Indiana precedent to the effect "that a party need not pursue administrative remedies, such as applying for rezoning or requesting a special exception, in order to grant the Court jurisdiction to hear a Constitutional takings claim," citing *Area Plan Commission of Ev-* *ansville and Vanderburgh County v. Major,* 720 N.E.2d 391, 395 (Ind.Ct.App.1999). Appellee's Br. p. 22. We do not read *Major* as supporting such a broad proposition, which would seem in any event to conflict with the controlling authority of *Williamson* and *Parker.*

cial requirements of the Grant County zoning ordinances for property in the I–2 classification. There was no final ruling from the BZA in this case concerning the extent to which the Howards could utilize their property, or whether they could use it, even if it was considered a junkyard. The BZA expressly noted in its December 13, 1999 order finding that Barodge was a junkyard, that such a use was not permitted "without a change of zoning or granting of a special exception . . . ."

Additionally, Defendant's Exhibit T, a December 15, 1999 letter from Ford to the Howards officially advising them that the BZA found that they were operating a junkyard, specifically stated, "you will need to file a Special Exception with the Board of Zoning Appeals to operate a junkyard." There is no evidence in the record that the Howards ever attempted to do so. In fact, Barry Howard testified that they did not do so, essentially stating his belief that he anticipated the BZA would deny it. Instead, the Howards tried to re-convince the BZA that they were not operating a junkyard through their second change of use application. Defendant's Exhibit X, which contains part of the Grant County zoning ordinances, also demonstrates that a junkyard may be operated in I–2 zoning if a special exception is granted, and is a permitted use in I–3 zoning. (It is also a permissible special exception use in an agricultural zone.) Joan Howard also testified that she did not want to seek a special exception for a junkyard because she did not believe Barodge was a junkyard. The BZA's decision to call Barodge a junkyard did not constitute a legally cognizable taking, however; if the BZA had granted a special exception, there could not have been a taking, regardless of the label placed on the Howards' business, even if it was not to the Howards' liking.

This case parallels *Williamson*. There, as here, a landowner was initially given approval to use his land in a certain way, only to have the local land-use authorities reverse that decision after the landowner had made investments in the property based on the initial approval. There, the landowner refused to attempt to obtain variances from the zoning regulations that facially governed the property; here, the Howards refused to ask the BZA to allow them to operate Barodge under a special exception. There, as here, the local land-use authorities had the discretion to allow the landowners to use the property in a way that did not conform strictly with applicable regulations, but the landowners never asked the authorities to exercise that discretion. Thus, in *Williamson* as here there was no final agency decision regarding application of the relevant zoning ordinances to the landowners' property. *Parker* demonstrates that this deprived the trial court here of subject matter jurisdiction over the Howards' claim. The only possible difference between *Williamson* and this case is that the Howards did not sue the BZA directly, but instead sued others—i.e. a different governmental body and its agents—whom they believed caused or facilitated a taking of their property. Regardless, to prevail on such a claim the Howards had to establish that a taking in fact occurred. There was no final agency decision here on that point.

■ We imagine that the Howards might respond to our holding today by asserting that any request to the BZA to grant a special exception to allow them to operate Barodge as a junkyard surely would have been denied and, thus, would have been futile. Barry Howard essentially testified to this effect. Courts may excuse the exhaustion of administrative remedies if the available remedy would be

futile. *Parker*, 726 N.E.2d at 1224. Our supreme court, however, very recently made it abundantly clear that "the mere fact than an administrative agency might refuse to provide the relief requested does not amount to futility," even if it seems "to be inevitable that the agency would rule against [the party seeking relief]." *Johnson*, 829 N.E.2d 979, 984.

The fact remains here that the BZA might have granted a special exception thus allowing the Howards to operate Barodge at the Marion location, though possibly by imposing additional conditions on Bardoge's operations or requiring certain improvements to the property. Because the Howards never attempted to obtain a special exception, however, there is no way of knowing whether this might have occurred and, under *Williamson* and related precedent, there was no final agency decision regarding the Howards' desired use of the property. Pursuant to *Parker*, this requires our sua sponte determination that the trial court lacked subject matter jurisdiction to enter judgment on the Howards' § 1983 claim that the BZA's rulings against them amounted to an unconstitutional taking, regardless of whether the claim is framed as strictly a Just Compensation Clause case or one arising under the Fourteenth Amendment's Due Process Clause.

There is one more consideration in this case. As mentioned, the Howards also sought damages related to city attorney Dawalt's temporary padlocking of their business location. The evidence at trial established that this event was unrelated to the BZA's rulings in this case, and was part of a separate nuisance abatement action the City wished to instigate against the Howards. To the extent this amounted to a temporary and complete taking of their property, as opposed to an alleged permanent taking as represented by the BZA's rulings, the trial court was empowered to enter judgment on this claim. *See First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.*, 482 U.S. 304, 321, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987).[5] The Appellants do not challenge this claim and concede that an award of damages in the amount of $7,665 is appropriate; they also do not mention or challenge the trial court's award of attorney fees. The Howards do not suggest an alternate figure. We therefore reverse the judgment in favor of the Howards in the amount of $170,200 because the bulk of this award clearly is related to the Howards' claim based on the alleged permanent taking of their property because of the BZA's rulings, over which the trial court lacked subject matter jurisdiction. We remand with instructions to enter judgment in the amount of $7,665. The award of attorney fees also remains.

### Conclusion

The trial court lacked subject matter jurisdiction to consider and enter judgment on the Howards' claim that the BZA's designation of Barodge as a junkyard operation constituted a governmental taking of their property, where they failed to follow available procedures to apply for a special exception to operate Barodge

---

**5.** The *Parker*, our supreme court concluded that the trial court lacked subject matter jurisdiction, based on the failure to exhaust administrative remedies, with respect to only one of three takings claims brought by the landowner. It addressed the other two takings claims on the merits, without suggesting that the existence of subject matter jurisdic- tion for these claims was sufficient to confer jurisdiction for the unripe claim. *See Parker*, 726 N.E.2d at 1222, 1225. This indicates it is appropriate to conclude here that the trial court lacked subject matter jurisdiction with respect to one of the Howards' claims but did possess it with respect to the other claim.

notwithstanding that designation. We reverse the judgment of $170,200 and remand with instructions to remit the judgment to $7,665.

Reversed and remanded.

KIRSCH, C.J., and BAKER, J., concur.