# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**RONALD E. WELDY**
Weldy & Associates
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**THOMAS M. FISHER**
Solicitor General

**HEATHER HAGAN MCVEIGH**
Deputy Attorney General
Indianapolis, Indiana

**RICK J. RUBLE**
Deputy Commissioner of Labor and
General Counsel
Indiana Department of Labor
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**SCOTT C. ANDREWS**
Coriden Coriden Andrews & Glover, LLC
Columbus, Indiana

FILED
Nov 14 2012, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOHN FOX, | ) |
| | ) |
| Appellant-Plaintiff, | ) |
| | ) |
| vs. | ) No. 03A01-1202-SC-52 |
| | ) |
| NICHTER CONSTRUCTION COMPANY, | ) |
| INC., | ) |
| | ) |
| Appellee-Defendant. | ) |

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT
The Honorable Chris D. Monroe, Special Judge
Cause No. 03D02-1010-SC-1785

**November 14, 2012**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

John Fox ("Fox"), the employee-claimant, appeals from the trial court's denial of his motion to correct error from an order of dismissal with prejudice, contending that the trial court erred in dismissing his wage claim for lack of subject matter jurisdiction.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Fox, who was employed by Nichter Construction Company, Inc. ("NCC"), alleged that he left his employment with NCC voluntarily.[1] After leaving NCC, Fox filed an Application For Wage Claim ("the Application") with the Department of Labor ("the DOL") in which he sought payment for vacation time that had allegedly accrued during his employment with NCC. The Application contained the following pertinent language:

> Pursuant to IC 22-2-9-5, I hereby assign to the Commissioner of Labor all my rights, title and interest in and to the above certified claim for processing in accordance with the provisions of IC 22-2-9-1, et seq.

*Appellant's App*. at 22.

The DOL sent a letter to NCC setting forth a deadline for NCC's response. NCC timely responded that Fox was a part-time employee and was ineligible for vacation pay. NCC supplied documents in support of its position. The day after receiving NCC's response, the DOL sent a letter to Fox stating that it "ha[d] been investigating the complaint" and found that Fox "w[as] not a full time employee" and was "ineligible to receive vacation payout." *Id*. at 32.

---

[1] In their briefs, the parties dispute whether Fox was a full-time employee or a part-time employee, in addition to whether Fox left his employment voluntarily. Resolution of those disputes is not relevant to our determination of the issue on appeal.

Fox filed a *pro se* action as a small claim in Bartholomew Superior Court. NCC failed to appear at the small claims trial date, and a default judgment was entered on behalf of Fox on November 5, 2010. On November 8, 2010, NCC filed a motion to set aside the default judgment and a motion to dismiss for lack of jurisdiction. NCC argued that Fox did not have standing to pursue his small claims action because his wage claim had been assigned to the DOL, and Fox had not obtained a referral letter from the Attorney General referring his claim back to him. NCC also argued that the trial court lacked jurisdiction because the DOL had already made the determination that Fox was a part-time employee who was ineligible for vacation pay. On April 4, 2011, the trial court entered its order setting aside the default judgment and dismissing Fox's case with prejudice for lack of subject matter jurisdiction.

Thereafter, Fox retained counsel, who faxed a letter to the DOL requesting that the wage claim be referred to Fox's counsel. That same day Fox's counsel filed a motion to correct error. In the motion, Fox argued that before counsel was hired, Fox had submitted his claim against NCC with the DOL thinking that was the appropriate course of action. However, Fox believed that he was entitled to accrued vacation pay because he was a full-time employee who voluntarily quit his employment with NCC after giving two-weeks notice. Fox's counsel attached an amended complaint to the motion in which he claimed entitlement to the vacation pay under the Wage Payment Statute.[2]

---

[2] *See* Ind. Code chapter 22-2-5.

Fox's counsel further stated in the motion that should the small claims court find that Fox's claim did fall under the Wage Claims Statute,[3] the alleged standing issue had been resolved or soon would be resolved. He asserted that he had requested a referral of Fox's claim from the DOL, and that the referral would likely be made within two weeks. After Fox's counsel received the referral letter from the DOL on May 23, 2011, he faxed the letter to the small claims court and to opposing counsel. The small claims court held a hearing on the motion to correct error on December 2, 2011, and later entered an order denying the motion to correct error. Fox now appeals.[4]

## DISCUSSION AND DECISION

The Wage Payment Statute and the Wage Claims Statute provide different procedural frameworks for different categories of claimants who have wage disputes. *St. Vincent Hosp. & Health Care Ctr., Inc., v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002). We have previously stated the following about the Wage Claims Statute and the Wage Payment Statute:

> Claimants who proceed under the Wage Claims statute may not file a complaint with the trial court. Rather, the wage claim is submitted to the Indiana Department of Labor. The Wage Claims statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute. By contrast, the Wage Payment statute applies to current employees and those who have voluntarily left employment, either permanently or temporarily. The Wage Payment statute does not require a claimant to submit his or her claim to the Indiana Department of Labor before filing suit.

---

[3] *See* Ind. Code chapter 22-2-9.

[4] The State of Indiana, by the Indiana Attorney General, pursuant to Indiana Code section 34-33.1-1-2, has filed an amicus brief. The State of Indiana's brief is in support of neither party, but is submitted because the decision under review implicates the interests of the Indiana Department of Labor, a state agency.

4

*E & L Rental Equip., Inc. v. Bresland*, 782 N.E.2d 1068, 1070 (Ind. Ct. App. 2003) (internal citations omitted). The issue presented in this appeal is the issue discussed in Justice Sullivan's dissent to the denial of a petition to transfer from this court's decision in *Quimby v. Becovic Management Group, Inc.*, 946 N.E.2d 30 (Ind. Ct. App. 2011) (dissent from denial of transfer reported at 962 N.E.2d 1199 (Ind. 2012)). Therefore, it is necessary to discuss this court's opinion in *Quimby*.

There, the claimant, Quimby, who voluntarily left her employment, made an application for wage claim with the DOL. Her application included the statement that she assigned her claim to the DOL. The DOL investigated her claim and found that certain deductions were not properly made and directed Becovic, to pay Quimby $590.39. Becovic sent a check in that amount to Quimby, and she cashed it.

Thereafter, Quimby filed an action with the trial court against Becovic under the Wage Payment Statute and alleged that Becovic had not paid wages and commissions she had earned and had not paid her for vacation time she had not used. The trial court granted Becovic's motion to dismiss on the grounds that it lacked subject matter jurisdiction and that Quimby had not stated a claim upon which relief could be granted. Quimby appealed the trial court's decision.

A panel of this court found that the trial court did not err by dismissing her action. First, we held that since Quimby had assigned her claim to the DOL, she was no longer a real party in interest. *Quimby v. Becovic Mgmt. Grp., Inc.*, 946 N.E.2d 30, 33 (Ind. Ct. App. 2011), and cited to our previous decision in *E & L Rental Equip., Inc. v. Gifford*, 744 N.E.2d

1007 (Ind. Ct. App. 2001). This Court further noted that since Quimby voluntarily left her employment she should have brought her claim under the Wage Payment Statute. Therefore, she need not have brought her claim to the DOL. Nonetheless, since the DOL accepted her claim and obtained a resolution for her, she could not raise the same claim in court if she was dissatisfied with the result obtained by the DOL. *Id.* at 34. We concluded that since the DOL, the real party in interest, had not ratified, substituted, or joined in the action, the remedy was dismissal. *Id.*

After her petition for rehearing was denied by this court, Quimby filed a petition for transfer to the Indiana Supreme Court. Transfer was denied, but Justice Sullivan dissented with opinion. In his dissent, in which Justice Rucker concurred, Justice Sullivan, stated the following:

> The facts of this case do not fall neatly into these well-settled categories. Anna Quimby filed her claim after she had voluntarily left her employment so her dispute fell under the Wage Payment Statute. But before she filed her complaint in court, she sought the DOL's assistance, even though she was not required to do so. At issue here is the effect of her submitting her claim to the DOL before filing this lawsuit.
>
> . . . .
>
> Quimby argues that she could not have assigned her claim to the DOL because the DOL is only authorized to take by assignment claims under the Wage Claims Statute and her claim is under the Wage Payment Statute. Specifically, she argues that the DOL can only take by assignment under Indiana Code section 22-2-9-5 those claims upon which the Wage Claims Statute has empowered the Commissioner of Labor to act under Indiana Code section 22-2-9-4(a), which gives to the Commissioner of Labor a duty to investigate claims falling under the Wage Claims Statute. Becovic responds that the plain language of Indiana Code section 22-2-9-5 does not limit the types of claims the DOL may take by assignment, and it cites an Opinion of the Attorney

6

General from 1941 and [*E & L Rental Equip., Inc. v.*] *Gifford*, 744 N.E.2d [744 N.E.2d 1007,] 1010 [(Ind. Ct. App. 2001)], in support of this position.

The plain language of Indiana Code section 22-2-9-5 suggests that the DOL may take by assignment claims like Quimby's, or at least it does not expressly prohibit the DOL from doing so. On the other hand, that section is part of the Wage Claims Statute, which suggests that assignment might be limited to only those claims. *See Roberts v. Sankey*, 813 N.E.2d 1195, 1198 (Ind. Ct. App. 2004) (location of statute within Code helpful in determining legislative intent), *trans. denied.* Moreover, I note that the purpose (or at least the effect) of the administrative exhaustion requirement under the Wage Claims Statute is to create a barrier to court, *Lemon v. Wishard Health Servs.*, 902 N.E.2d 297, 301 (Ind. Ct. App. 2009), *trans. denied,* and assignment to the DOL of claims falling under that statute serves that end. The same cannot be said for claims falling under the Wage Payment Statute, which may be brought directly in court.

I believe that we should grant transfer in this case to determine whether claims under the Wage Payment Statute may be assigned to the DOL, in part because it does not appear that the DOL itself is clear on this question. The DOL did not indicate in any of the materials that it sent to either Quimby or Becovic that it was the assignee of Quimby's claim. Rather, it referred to its services as "mediation" and even suggested that Quimby file the very lawsuit giving rise to this appeal. Neither the instructions attached to the DOL's electronic "Application For Wage Claim" nor the frequently asked questions on the DOL's website acknowledge that it is taking these claims by assignment. *See* Wage Claim Instructions & Application (2009), *available at* http://www.in.gov/dol/files/WageClaimInstructionsApp092407Corrected.pdf (last visited Feb. 9, 2012) (stating the DOL "accepts Wage Claims as a service to resolve wage disputes"); DOL: Wage & Hour FAQs, http://www.in.gov/dol/2345. htm# 104 (last visited Feb. 9, 2012) (noting that current employees or those who have voluntarily separated may either file a wage claim or file a lawsuit). And, the language on its form states that the claim is being assigned for "processing in accordance with the provisions of [the Wage Claims Statute]," so it might very well be that the DOL only intends to take by assignment claims under that statute.

There are likely many other claimants in Quimby's position—claimants that do not have to but nevertheless seek the DOL's assistance with their wage disputes. Because the Court has decided not to grant transfer, I urge the DOL to examine this question and if it agrees with the Court of Appeals that in such circumstances it takes these claims by assignment, to revise its documents to

make that clear to both the employee and employer, or if it concludes contrary to the decision of the Court of Appeals that it does not take these claims by assignment, to revise its form to remove this language.

962 N.E.2d at 1200-01.

In this case, Fox alleges that he voluntarily left his employment with NCC after giving a two-week notice. He, like Quimby, could have proceeded by bringing an action in small claims court, but sought DOL's assistance in resolving the dispute instead. Without opining on the merits of Fox's claim, the DOL has supplied this Court with its position regarding its forms and the assignment and reassignment of claims presented to it.

The DOL provides an online process for workers to complete and sign an Application for Wage Claim. *See* Indiana Department of Labor, *Online Wage Claim Form*, http://www.in.gov/dol/2671.htm. (last visited on Oct. 3, 2012). The claimant may obtain a paper form of the application, or may print an electronic version, which is available in portable document format. If a claim is for less than $6,000, the DOL may take assignment of the claim. Ind. Code § 22-2-9-5(a).

According to the DOL, prior to April 27, 2012, every Application for Wage Claim form contained the assignment language previously set forth in this opinion, in *Quimby*, and in *E & L Rental Equipment*. Therefore, claimants who submitted and signed the form, whether proceeding under the Wage Claim Statute or the Wage Payment Statute assigned their claim to the DOL. By statute, when the wage claim is submitted to the DOL it then becomes "the duty of the commissioner of labor to enforce and to insure compliance with the provisions of this chapter, to investigate any violations of any of the provision of this chapter,

8

and to institute or cause to be instituted actions for penalties and forfeitures provided under this chapter." Ind. Code § 22-2-9-4(a). The DOL Commissioner may exercise the duty, or "may refer claims for wages under this chapter to the attorney general, and the attorney general may institute civil actions on behalf of the claimant or may refer the claim to any attorney admitted to the practice of law in Indiana." Ind. Code § 22-2-9-4(b).

If the DOL chooses to resolve the claim instead of making a referral "[t]he commissioner of labor may hold a hearing to satisfy himself as to the justice of any claim, and he shall cooperate with any employee in the enforcement of any claim against his employer in any case whenever, in his opinion, the claim is just and valid." Ind. Code § 22-2-9-4(a). However, in practice, the DOL does not hold hearings on wage claims. Instead, the DOL notifies the employer of the claim in writing and gives the employer two weeks to mail a check directly to the claimant or dispute the amount claimed. Indiana Department of Labor, *Online Wage Claim Form*, http://www.in.gov//dol/2734.htm (last visited Oct. 3, 2012). If neither the claimant nor the DOL receives a response from the employer, then a final notice is sent to the employer providing for a one-week period of time in which to respond. *Id.* If the employer fails to respond to the final notice, then the DOL sends a copy of the wage claim file to the claimant along with a letter recommending that the claimant consult with an attorney or pursue the claim in court. *Id.*

If the employer disputes the claim, however, the DOL will make a determination based upon the law and the documentation provided by the parties. *Id.* The determination is made by a non-attorney employee of the DOL since the DOL does not employ administrative

law judges, and the determination is made based upon a paper record. It is the DOL's position that the determination does not represent formal findings, nor is it binding on the parties. If the DOL cannot make a determination, the claimant "will receive notice along with a letter recommending that [he or she] consult an attorney or pursue [the] claim in the appropriate court." *Id.*

The DOL contends that it does not provide a formal claim resolution process and is not required to do so by law. The DOL considers the administrative process it provides to be more in the nature of mediation than a formal administrative review, and is not subject to judicial review.

Although the claimants who are involuntarily separated from their employment must submit their claim to the DOL first before proceeding to court, it is the DOL's practice to accept all claims regardless of whether they arise under the Wage Claims Statute or the Wage Payment Statute. *St. Vincent Hosp.*, 766 N.E.2d at 705 (claimant under Wage Claims Statute must submit claim first with DOL). The DOL has adopted this approach because it is consistent with the DOL's statutory authority and promotes judicial economy by allowing all wage claimants the opportunity to resolve their wage disputes at the administrative level first. Further, the DOL contends that there is nothing in either the Wage Claims Statute or the Wage Payment Statute to prevent all claimants from submitting their claims to the DOL. The DOL argues that it benefits both the parties and trial courts to allow all claimants to attempt to resolve their disputes administratively. When the DOL is able to resolve the claims to the

satisfaction of both the claimant and the employer, then there is no need to present the claim in court.

One of the problems, however, which is illustrated by the situation in *Quimby* and in the present case, is a claimant's inability to sue his or her employer in the event the DOL's efforts at resolving the dispute prove to be unsuccessful. Under the holdings in *Quimby* and *E & L Rental Equipment*, once a claimant has "assigned" his or her claim to the DOL, the claimant cannot bring an action in court because the claimant is no longer the real party in interest. *Quimby*, 946 N.E.2d at 34; *E & L Rental Equip.*, 744 N.E.2d at 1011. The holdings make sense if one assumes that the claimant's claim remains assigned to the DOL after the DOL has completed its process, which it considers to be an administrative mediation, and returns the file to the claimant. This is not the DOL's view of the posture of the claim once this process is completed.

The DOL's position is that when it is unable to resolve the claim, the claimant "will receive notice along with a letter recommending [he or she] consult an attorney or pursue [the] claim in the appropriate court." Indiana Department of Labor, *Online Wage Claim Form*, http://www.in.gov//dol/2734.htm (last visited Oct. 3, 2012). The DOL considers the notice to be a reassignment of the claim to the claimant. However, the notices do not make that intention clear.

At the urging of Justice Sullivan in his dissent from the denial of transfer in *Quimby*, the DOL has examined the question and has concluded that it will no longer accept assignment of wage claims under either the Wage Claims Statute or Wage Payment Statute

11

unless the claimant requests that the DOL do so. The DOL has removed the assignment language from its Application for Wage Claim form. *See* http://www.in.gov/dol/files/WageClaimInstructionsApp092407Corrected.pdf (last visited Oct. 3, 2012). The old forms containing the assignment language have been destroyed, and the new forms became effective April 27, 2012. Claimants are no longer required to assign their claims to the DOL in order to proceed administratively to resolve their wage disputes.

Because the Wage Payment Statute does not refer to an assignment, and the Wage Claims Statute *allows,* but does not require, the assignment of claims, this new approach is consistent with the DOL's statutory authority. The DOL is authorized by statute to resolve wage disputes without taking assignment of the employee's claim. Therefore, the DOL has clarified its position vis-à-vis claimants using the new Application for Wage Claim form. So where does that leave us in Fox's appeal?

In its motion to set aside default judgment and motion to dismiss for lack of jurisdiction, NCC contended that Fox had no direct, private cause of action for his wage claim and cited to the Wage Claims Statute. NCC argued that the small claims court had no jurisdiction to decide Fox's claim. The trial court agreed, vacated the default judgment, and dismissed Fox's claim for lack of subject matter jurisdiction.

In Fox's motion to correct error, he asserted that his claim was actually a claim under the Wage Payment Statute, which allowed Fox to pursue a direct, civil cause of action and contended that the trial court did have subject matter jurisdiction over Fox's claim. Fox argued in the alternative that if the trial court decided that Fox's claim was pursuant to the

12

Wage Claim Statute any jurisdictional issue would soon be resolved after obtaining the referral letter that had been requested from the DOL. While the motion to correct error was pending, Fox submitted to the trial court and counsel for NCC the referral letter Fox's counsel had obtained from the DOL that reassigned Fox's claim to him.

NCC argued in opposition to Fox's motion to correct error that the trial court correctly determined that it lacked subject matter jurisdiction and that the doctrine of *res judicata* applied and barred the trial court from making a determination in the case. In reference to the *res judicata* argument, NCC contended that in light of the decision in *Quimby* the nature of Fox's claim, one brought under the Wage Claims Statute or one brought under the Wage Payment Statute, was irrelevant since Fox had assigned his claim to the DOL. NCC's position was that the notice sent to Fox constituted a ruling by the DOL and that pursuant to *Quimby*, Fox could not bring an action in court after having obtained the ruling. The trial court denied Fox's motion to correct error without explanation.

Although other grounds were argued by the parties in support of and in opposition to the motion to correct error, the trial court's ruling that Fox's claim was dismissed because the trial court lacked subject matter jurisdiction, was upheld without explanation when the motion to correct error was denied. In *E & L Equipment*, we stated the following about challenges to a plaintiff's assertion of a claim:

> An objection based on whether a plaintiff is the "real party in interest" asserts that the plaintiff is not the owner of the claim sued on. Ind. Trial Rule 17(A) requires that: "Every action shall be prosecuted in the name of the real party in interest." However, T.R. 17(A) also provides that: "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time after objection has been allowed for the real

13

party in interest to ratify the action, or to be joined or substituted in the action. . . ." Nonetheless, under T.R. 12 (B)(6), when the real party in interest does not ratify, substitute or join the action, the remedy for an action brought by a party other than the real party in interest is dismissal.

744 N.E.2d at 1011 (internal citations omitted). Thus, under *Quimby* and *E & L Equipment*, a dismissal under Trial Rule 12(B)(6) would have been proper because at the time of the trial court's ruling, Fox was not the real party in interest to the claim.

However, the trial court's order dismissing Fox's claim with prejudice stated that the trial court lacked subject matter jurisdiction. The transcript of the hearing on the motion to set aside the default judgment and motion to dismiss the claim for lack of jurisdiction is not before this court on appeal. However, NCC stated in its response in opposition to the motion to correct error that the trial court had made it clear to the parties that the trial court might not have jurisdiction to decide the case because of Fox's representations that a decision was already made by the DOL regarding his claim. Therefore, the doctrine of *res judicata* might prevent the trial court from deciding Fox's case.

We address the issue of subject matter jurisdiction because Fox's small claims action was dismissed with prejudice. "A dismissal with prejudice is a dismissal on the merits." *Ilagan v. McAbee*, 634 N.E.2d 827, 829 (Ind. Ct. App. 1994) (citing *Lakeshore Bank & Trust Co. v. United Farm Bureau Mut. Ins. Co.*, 474 N.E.2d 1024 (1985)). "A dismissal with prejudice is conclusive of the rights of the parties and is res judicata as to any questions which might have been litigated." *Id*.

"Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs." *K.S. v. State*, 849 N.E.2d 538, 540 (Ind.

14

2006). "In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support." *GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind. 2001). "In addition, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts." *Id*.

A trial court must possess subject matter jurisdiction in order to enter a valid judgment in a case. *City of Marion v. Howard*, 832 N.E.2d 528, 531 (Ind. Ct. App. 2005),*trans. denied, cert. denied*. The absence of subject matter jurisdiction cannot be waived, and it renders a judgment void. *Id.* Even if no party raises the issue on appeal, we have the duty to raise and determine the issue sua sponte if lack of subject matter jurisdiction in the original tribunal is apparent from the record. *Id.* Additionally, parties cannot confer subject matter jurisdiction on a court by consent or agreement. *Id.* Such jurisdiction can only be conferred by the Indiana Constitution or by statute. *Christensen v Christensen*, 752 N.E.2d 179, 182 (Ind. Ct. App. 2001).

> The doctrine of *res judicata* prevents the repetitious litigation of disputes that are essentially the same. The principle of *res judicata* is divided into two branches: claim preclusion and issue preclusion, also referred to as collateral estoppel. . . .
>
> . . . .
>
> Claim preclusion applies where a final judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. In order for a claim to be precluded under the doctrine of *res judicata,* the following four requirements must be satisfied: (1) the former judgment must have been rendered by a court

15

of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. We observe that either party may move to dismiss a claim and a dismissal with prejudice constitutes a dismissal on the merits. Thus, a dismissal with prejudice is conclusive of the rights of the parties and is *res judicata* as to any questions that might have been litigated. In determining whether the doctrine should apply, it is helpful to inquire whether identical evidence will support the issues involved in both actions.

. . . .

Issue preclusion, or collateral estoppel, bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. Where collateral estoppel is applicable, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. However, the former adjudication will only be conclusive as to those issues that were actually litigated and determined therein. Collateral estoppel does not extend to matters that were not expressly adjudicated and can be inferred only by argument. In determining whether to allow the use of collateral estoppel, the trial court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case.

*Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1173-76 (Ind. Ct. App. 2006) (internal citations omitted).

In this case, the trial court reached the conclusion that the DOL had rendered a decision on Fox's claim, thus barring the trial court from rendering a decision in the matter. However, as we now know based upon the DOL's explanation of its position on the resolution of claims brought before it, a formal decision was not reached by it regarding Fox's claim. Indiana Trial Rule 54 defines "judgment" to include "a decree and any order from which an appeal lies." Black's Law Dictionary defines "final judgment" as follows:

16

> One which puts an end to an action at law by declaring that the plaintiff either has or has not entitled himself to recover the remedy he sues for. . . . A judgment which disposes of the subject-matter of the controversy or determines the litigation as to all parties on its merits. A judgment which terminated all litigation on the same right. . . .

Black's Law Dictionary 437 (5th ed. 1983). In this case, the letter upon which the trial court relied was the DOL's letter to Fox stating that it was "unable to make a determination in [his] favor." *Appellant's App*. at 32. It does not appear from this letter that a final judgment was entered, and claim preclusion would not deprive the trial court of jurisdiction.

As for issue preclusion, the record reveals that the DOL received Fox's claim and gave NCC the opportunity to respond to the claim. NCC opposed Fox's claim, thus the DOL could not mediate the claim. The DOL sent the letter to Fox without giving him the opportunity to respond to his former employer's materials in opposition to his claim. Therefore, it would be fair to say that at the DOL level Fox did not have a full and fair opportunity to litigate the issue. Furthermore, the application of collateral estoppel would be unfair given the facts of this particular case.

An "adjudication" is defined by Black's Law Dictionary as follows:

> The formal giving or pronouncing a judgment or decree in a cause; also the judgment given. The entry of a decree by a court in respect to the parties in a case. It implies a hearing by a court, after notice, of legal evidence on the factual issue(s) involved. The equivalent of a "determination." And contemplates that the claims of all the parties thereto have been considered and set at rest.

17

Black's Law Dictionary 20 (5th.ed. 1983).[5]  The definition of "administrative adjudication" is as follows:

> The process by which an administrative agency issues an order, such order being affirmative, negative, injunctive or declaratory in form.

*Id*. at 22.

The trial court erred by dismissing Fox's claim with prejudice for lack of subject matter jurisdiction.  We reverse the trial court's order and remand this matter to the trial court with instructions to enter an order that Fox's claim is dismissed without prejudice under Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted, including the failure to name the real party in interest.  Thus, Fox may proceed to refile his claim setting forth the reassignment by the DOL.  "A dismissal without prejudice is not a determination of the merits of a complaint and does not bar a later trial of the issues." *Wood v. Zeigler Bldg. Materials, Inc.*, 436 N.E.2d 1168, 1170 (Ind. Ct. App. 1982).

Affirmed in part, reversed in part, and remanded.

NAJAM, J., concurs.

MAY, J., dissents with separate opinion.

---

[5] "Determination" is defined by Black's Law Dictionary as follows:

> The decision of a court or administrative agency.  It implies an ending or finality of a controversy of suit.  The ending or expiration of an estate or interest in property, or of a right, power, or authority.  The coming to an end in any way whatever.

Black's Law Dictionary 235 (5th. ed. 1983).

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOHN FOX, | ) |
| | ) |
|     Appellant-Plaintiff, | ) |
| | ) |
|         vs. | )    No.  03A01-1202-SC-52 |
| | ) |
| NICHTER CONSTRUCTION COMPANY, | ) |
| INC., | ) |
| | ) |
|     Appellee-Defendant. | ) |
| | ) |

**MAY, Judge, dissenting**.

I believe dismissal of Fox's wage claim action was correct, and I therefore respectfully dissent. Fox's case is not factually or legally distinguishable from *Quimby v. Becovic Mgmt Group, Inc*., 946 N.E.2d 30, 33-34 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*, and thus *Quimby* controls. As we stated in *Quimby*:

> Quimby, who voluntarily left her employment, should have brought her claim in court under the Wage Payment statute. Nevertheless, she brought it to the DOL, the DOL accepted it, and the DOL obtained a resolution for her. We decline to hold an employee, regardless of whether or why she is not longer employed by an employer, may bring a claim before the DOL, assign it to the DOL, and then bring the same claim in court if the employee is dissatisfied with the result obtained by the DOL.

*Id*. Like Quimby, Fox chose to pursue his wage claim through the Wage Claim statute, and not the Wage Payment statute. That choice had the effect of precluding any future judicial

19

action because he assigned his claim to the DOL and sought a resolution through the DOL.

The *amici's* explanation of the DOL's intent is informative, and its recent changes are a helpful step toward clarifying the procedures by which a voluntarily-separated employee may pursue wage claims. But I do not think *Quimby* may be distinguished on those grounds. Both Fox and Quimby were voluntarily-separated employees who chose to pursue their claims through the DOL, and the DOL obtained a resolution in both instances. In light of the DOL's policies and procedures in place at the time of their claims, both parties were, therefore, precluded from a second bite at the proverbial apple.

Based on the foregoing, I respectfully dissent.